**Nos. 21-3023; 22-1012**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY,
*Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,
*Respondent*.

Petition for Review of Actions of the U.S. Environmental Protection
Agency

**PROOF BRIEF FOR
U.S. ENVIRONMENTAL PROTECTION AGENCY**

Of Counsel:

ELIZABETH PETTIT
U.S. Environmental
Protection Agency
Washington, D.C.

NEIL R. BIGIONI
JACOBINE DRU
Office of Regional Counsel
U.S. Environmental
Protection Agency
Philadelphia, PA

TODD KIM
*Assistant Attorney General*

JEFFREY HUGHES
*Attorney*
Environment and Natural Resources
Division
U.S. Department of Justice
Post Office Box 7411
Washington, D.C. 20044
(202) 532-3080
jeffrey.hughes@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................iv

INTRODUCTION ...........................................................................................1

STATEMENT OF JURISDICTION ..................................................................2

STATEMENT OF THE ISSUES.......................................................................2

PERTINENT STATUTES AND REGULATIONS ...........................................3

STATEMENT OF THE CASE ..........................................................................3

    A.    Statutory and regulatory background.........................................3

        1.    The Clean Air Act ..................................................................3

        2.    State Implementation Plans ...................................................5

        3.    RACT requirements for ozone ...............................................7

    B.    Factual background .......................................................................9

        1.    The Pennsylvania presumptive RACT II
              SIP revision and conditional approval of the
              source-specific RACT process..............................................9

        2.    The source-specific SIP revisions.....................................13

STANDARD OF REVIEW ..............................................................................16

SUMMARY OF ARGUMENT.........................................................................17

ARGUMENT..................................................................................................19

I.    EPA Reasonably Determined That SIP Revisions That
    Do Not Increase Emissions Do Not "Interfere" With
    Attainment Of The NAAQS Under Section 7410(*l*). ........................19

A. The plain text of Section 7410(*l*) and the structure of the CAA support EPA's interpretation of Section 7410(*l*). ..............................20

B. The Center's argument that Section 7410(*l*) requires attainment of the NAAQS finds no support in definitions, the structure of the CAA, or the case law. ...................................................26

    1. The Center reads the word "attainment" in isolation from the rest of Section 7410(*l*) and the CAA as a whole. ...........................................27

    2. Section 7410(*l*) does not require air quality modeling. ...............................................29

    3. EPA's emissions-focused Section 7410(*l*) analysis ensures noninterference with the NAAQS. ...............................................30

II. The Center Has Not Preserved For Review Its Argument That The SIP Revisions Increase Emissions. .................34

A. The Center failed to raise any arguments before EPA that the SIP revisions at issue increased emissions, and has therefore forfeited these contentions. ...............................................34

B. Presumptive RACT II is not the proper baseline against which case-by-case RACT II should be compared. ...............................................38

C. If the Court reaches the Center's argument regarding the thermal oxidizer at the Roystone Compressor Station, the Court should remand the record solely with respect to that facility without vacatur to allow EPA to correct a misstatement and provide further explanation. ......................44

CONCLUSION ........................................................................................46

# TABLE OF AUTHORITIES

## Cases

*Ala. Env't Council v. EPA,*
   711 F.3d 1277 (11th Cir. 2013) ........................................... 21

*Alaska Dep't of Env't Conservation v. EPA,*
   540 U.S. 461 (2004) ............................................................ 17

*Appalachian Power Co. v. EPA,*
   251 F.3d 1026 (D.C. Cir. 2001) ......................................... 37

*B.J. Alan Co. v. ICC,*
   897 F.2d 561 (D.C. Cir. 1990) ........................................... 45

*Bell v. Cheswick Generating Station,*
   734 F.3d 188 (3d Cir. 2013) ................................................. 7

*Bonkowski v. Oberg Indus., Inc.,*
   787 F.3d 190 (3d Cir. 2015) ............................................... 21

*Concerned Citizens of Bridesburg v. EPA,*
   836 F.2d 777 (3d Cir. 1987) ................................................. 5

*Deal v. United States,*
   508 U.S. 129 (1993) ........................................................... 28

*Dir., Office of Workers' Comp. Programs v. N. Am. Coal Corp.,*
   626 F.2d 1137 (3d Cir. 1980) ....................................... 36, 38

*Duquesne Light Co. v. EPA,*
   166 F.3d 609 (3d Cir. 1999) ................................................. 6

*Ethyl Corp. v. Browner,*
   989 F.2d 522 (D.C. Cir. 1993) ........................................... 45

*1000 Friends of Maryland v. Browner,*
265 F.3d 216 (4th Cir. 2001) .................................................................. 30

*Galveston-Houston Ass'n for Smog Prevention v. EPA,*
289 F. App'x 745 (5th Cir. 2008) .......................................................... 21

*In re Kagan,*
351 F.3d 1157 (D.C. Cir. 2003) .............................................................. 36

*Indiana v. EPA,*
796 F.3d 803 (7th Cir. 2015) ..................................... 20, 23, 25, 32, 33

*Ky. Res. Council, Inc. v. EPA,*
467 F.3d 986 (6th Cir. 2006) ..................................... 20, 21, 23, 24, 25

*Kleissler v. U.S. Forest Serv.,*
183 F.3d 196 (3d Cir. 1999) .................................................................. 36

*Loma Linda Univ. v. Schweiker,*
705 F.2d 1123 (9th Cir. 1983) ................................................................ 44

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,*
463 U.S. 29 (1983) .................................................................................. 17

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,*
551 U.S. 644 (2007) ................................................................................ 17

*Nat'l Wildlife Fed'n v. EPA,*
286 F.3d 554 (D.C. Cir. 2002) ....................................................... 35, 36

*Oakwood Lab'ys LLC v. Thanoo,*
999 F.3d 892 (3d Cir. 2021) .................................................................. 21

*Pennsylvania v. ICC,*
590 F.2d 1187 (D.C. Cir. 1978) ............................................................ 45

*S. Coast Air Quality Mgmt. Dist. v. EPA ("SCAQMD"),*
    472 F.3d 882 (D.C. Cir. 2007) ........................................................ 9, 22

*Sw. Pa. Growth All. v. Browner,*
    121 F.3d 106 (3d Cir. 1997) ........................................................ 33, 36

*Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United
    Auto., Aerospace & Agric. Implement Workers of Am.,*
    523 U.S. 653 (1998) ........................................................................ 28

*Train v. Nat. Res. Def. Council,*
    421 U.S. 60 (1975) ............................................................................ 6

*Union Elec. Co. v. EPA,*
    427 U.S. 246 (1976) .......................................................................... 6

*United States v. Boggi,*
    74 F.3d 470 (3d Cir. 1996) .............................................................. 43

*Util. Air Regul. Grp. v. EPA,*
    744 F.3d 741 (D.C. Cir. 2014) ........................................................ 37

*WildEarth Guardians v. EPA,*
    759 F.3d 1064 (9th Cir. 2014) ..................................... 24, 25, 26, 31, 33

**Statutes**

5 U.S.C. § 706(2)(A) ............................................................................ 16

42 U.S.C. § 7407(a) .............................................................................. 5

42 U.S.C. § 7407(d)(1)(A)-(B) .............................................................. 4

42 U.S.C. § 7409(a)-(b) ........................................................................ 4

42 U.S.C. § 7409(d)(1) ......................................................................... 4

42 U.S.C. § 7410(a)(1) ......................................................................... 6

42 U.S.C. § 7410(a)(2) ................................................................. 6

42 U.S.C. § 7410(a)(2)(K)(i) ..................................................... 29

42 U.S.C. § 7410(k) ................................................................. 16

42 U.S.C. § 7410(k)(3) ............................................................. 6

42 U.S.C. § 7410(*l*) .............................. 2, 3, 14, 17, 18-20, 22-24, 26-28, 30

42 U.S.C. § 7413 ..................................................................... 7

42 U.S.C. § 7502 ..................................................................... 9

42 U.S.C. § 7511(a)(1) ............................................................. 4

42 U.S.C. § 7511a ................................................................... 4

42 U.S.C. § 7511a(b)(2) .......................................................... 10

42 U.S.C. § 7511a(b)(2)(A)-(B) ................................................ 8

42 U.S.C. § 7511a(b)(2)(C) ...................................................... 8

42 U.S.C. § 7511a(c)(2)(A) ................................................ 29, 30

42 U.S.C. § 7511a(f) ............................................................ 5, 8

42 U.S.C. § 7511c ............................................................. 4, 22

42 U.S.C. § 7511c(a) ............................................................... 4

42 U.S.C. § 7511c(b) ......................................................... 10, 22

42 U.S.C. § 7511c(b)(2) ........................................................... 5

42 U.S.C. § 7604(a) ................................................................. 7

42 U.S.C. § 7607(b)(1) .............................................................. 2

42 U.S.C. § 7607(d) ................................................................ 16

42 U.S.C. § 7607(d)(1) ........................................................... 16

42 U.S.C. § 7607(d)(1)(V) ...................................................... 16

42 U.S.C. § 7607(d)(7)(B) ...................................................... 37

42 U.S.C. § 7607(d)(9)(A) ...................................................... 16

**State Statutes**

25 Pa. Code § 121.1 ............................................................ 8, 10

25 Pa. Code § 129.96 ............................................. 10, 11, 12, 38

25 Pa. Code § 129.97 ............................................. 10, 12, 42, 43

25 Pa. Code § 129.98 ............................................. 10, 12, 13, 38

25 Pa. Code § 129.98(a) ..................................................... 11, 38

25 Pa. Code § 129.98(d) ................................................. 11, 38, 43

25 Pa. Code § 129.99 ............................... 10, 12, 13, 38, 39, 40, 42

25 Pa. Code § 129.99(a) .......................................................... 39

25 Pa. Code § 129.99(b) ..................................................... 12, 39

25 Pa. Code § 129.99(c) ..................................................... 12, 39

25 Pa. Code § 129.99(g) ..................................................... 40, 41

25 Pa. Code § 129.100 ............................................................ 10

## Code of Federal Regulations

40 C.F.R. § 50.11................................................................32

40 C.F.R. § 51.1105.............................................................9

40 C.F.R. § 81.339............................................................5, 9

## Federal Registers

57 Fed. Reg. 13498 (Apr. 16, 1992) ...........................................7

57 Fed. Reg. 55620 (Nov. 25, 1992)...........................................7

62 Fed. Reg. 38856 (July 18, 1997) ...........................................9

73 Fed. Reg. 16436 (Mar. 27, 2008) ..........................................9

77 Fed. Reg. 9532 (Feb.17, 2012) ............................................31

80 Fed. Reg. 12264 (Mar. 6, 2015) ...........................................9

84 Fed. Reg. 20274 (May 9, 2019)................................7, 10, 11, 12, 38, 40

85 Fed. Reg. 41972 (July 13, 2020) ...........................................4

86 Fed. Reg. 48908 (Sept. 1, 2021).....................2, 13-16, 23-26, 33, 39, 45

86 Fed. Reg. 60170 (Nov. 1, 2021)..............2, 13-15, 23, 24, 26, 33, 39, 43

## Other

Bryan A. Garner, Garner's Dictionary of Legal Usage (3d ed. 2011) ...21

Merriam-Webster's Collegiate Dictionary (11th ed. 2005) ....................21

Webster's New World Dictionary (3d ed. 1988) ......................................21

## GLOSSARY

| | |
|---|---|
| CAA | The Clean Air Act. |
| EPA | Respondent Environmental Protection Agency. |
| NAAQS | National Ambient Air Quality Standards. EPA issues and revises NAAQS for certain pollutants under the CAA. |
| NOx | Nitrogen oxides. A precursor pollutant to the formation of ozone that is formed by the combustion of fossil fuels. |
| RACT | Reasonably Available Control Technology. The lowest emission limit that a particular source is capable of meeting by the application of the control technology that is reasonably available considering technological and economic feasibility. |
| SIP | State implementation plan. |
| VOC | Volatile organic compound. A precursor pollutant to the formation of ozone that is formed by the combustion of fossil fuels, among other ways. |

## INTRODUCTION

For over 15 years, the Environmental Protection Agency has consistently determined that changes to a state implementation plan ("SIP") under the Clean Air Act ("CAA") do not "interfere" with attainment of EPA's National Ambient Air Quality Standards ("NAAQS") so long as the status quo air quality is preserved, i.e., those changes do not lead to a net increase of emissions. This interpretation of an "anti-backsliding" provision of the CAA is consistent with the plain meaning and structure of the statute, as well as the case law.

Petitioner Center for Biological Diversity (the "Center") ignores this long-standing interpretation—and the case law supporting it—and instead contends that a state's changes to its SIP "interfere" with attainment of EPA's air quality standards if they do not necessarily lead to attainment of—or at least advance—those standards. This interpretation reads a single word in the statute in isolation from the rest of the provision and the CAA, and is unsupported by any definitions or case law. The Center's remaining arguments were not raised during the public comment period, and so the Center has forfeited them. The Court should deny these consolidated petitions.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 42 U.S.C. § 7607(b)(1). The petition for review was timely filed because the notices of approval of the SIP revisions at issue here were published on September 1, 2021, 86 Fed. Reg. 48908 (Sept. 1, 2021), and November 1, 2021, 86 Fed. Reg. 60170 (Nov. 1, 2021), and the petitions for review were filed on November 1, 2021 (Case No. 21-3023, Dkt. No. 1), and January 3, 2022 (Case No. 22-1012, Dkt. No. 1), respectively.

## STATEMENT OF THE ISSUES

The CAA requires Pennsylvania to impose Reasonably Available Control Technology ("RACT") at major sources of volatile organic chemicals ("VOCs") and nitrogen oxides ("NOx"). The Center challenges EPA's approval of certain RACT determinations as inconsistent with 42 U.S.C. § 7410(*l*),[1] which bars approval of a SIP revision if it would "interfere with any applicable requirement concerning attainment." Here, EPA determined that Pennsylvania's RACT determinations do not increase emissions.

_____

[1] The Center, and many of the reported cases, refer to this provision by its location in the CAA, which is Section 110(*l*). For ease of reference, EPA provides its location in the United States Code.

These consolidated petitions raise the following issues:

1.    Whether EPA reasonably determined that the SIP revisions at issue did not "interfere" with attainment of the NAAQS under 42 U.S.C. § 7410(*l*) where those revisions did not increase emissions?

2.    Whether this Court may consider arguments not raised by the Center or any other party during the public comment period of the rules at issue in these consolidated petitions for review?

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no related cases or proceedings.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations that are not included in the Statutory and Regulatory Addendum accompanying the Center's opening brief are included in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory and regulatory background

### 1.    The Clean Air Act

The CAA requires that EPA promulgate and revise NAAQS for certain pollutants to protect public health and welfare. 42 U.S.C.

§ 7409(a)–(b), (d)(1). This case concerns EPA's revised 1997 and 2008 NAAQS for ozone.

Upon promulgation of an ozone NAAQS, EPA must designate geographic areas as "nonattainment," "attainment," or "unclassifiable" for that NAAQS. *See id.* § 7407(d)(1)(A)–(B). Areas designated as nonattainment for the ozone NAAQS are classified according to the severity of their air quality problems. *Id.* § 7511(a)(1). Ozone NAAQS nonattainment areas may be classified "Marginal," "Moderate," "Serious," "Severe," or "Extreme." *Id.* Depending on their classification, nonattainment areas are subject to increasingly stringent requirements for pollutants that are precursors to the formation of ozone—namely, VOCs and NOx. *Id.* §§ 7511a, 7511c. The CAA also establishes an Ozone Transport Region that consists of eleven eastern states—including Pennsylvania—and the metropolitan area that includes the District of Columbia, based on the recognition that the transport of ozone and ozone precursors throughout the region may render the states' attainment strategies interdependent. *Id.* § 7511c(a), 85 Fed. Reg. 41972 (July 13, 2020). Major sources of VOCs and NOx in the Ozone Transport Region are "subject to the requirements which would be

4

applicable to major stationary sources if the area were classified as a

Moderate nonattainment area," 42 U.S.C. §§ 7511a(f); 7511c(b)(2),

which includes RACT.[2]

## 2.    State Implementation Plans

States have primary responsibility for ensuring air quality within

their jurisdictions by submitting SIPs that specify the manner in which

the NAAQS will be achieved and maintained. 42 U.S.C. § 7407(a);

*Concerned Citizens of Bridesburg v. EPA*, 836 F.2d 777, 779 (3d Cir.

1987) (The "states have the primary authority for establishing a specific

plan . . . for achieving and maintaining acceptable levels of air

---

[2] Because the Ozone Transport Region encompasses entire states, it
includes areas designated as nonattainment for ozone that may be
classified above moderate non-attainment, and therefore sources in that
nonattainment area are subject to standards that are more stringent
than moderate area standards. Conversely, most of the geographic area
within the Ozone Transport Region is not designated as non-attainment
for the 2008 ozone NAAQS, and would not be subject to any ozone
nonattainment area requirements, including RACT, if they were located
outside of the Ozone Transport Region boundaries. For instance, under
the 1997 ozone NAAQS, only 12 of Pennsylvania's 67 counties are
designated as nonattainment. 40 C.F.R. § 81.339. For the 2008 ozone
NAAQS, only 17 of the 67 counties are designated as nonattainment. *Id.*
Importantly, the counties located in the Ozone Transport Region but
outside of any nonattainment area are not required to attain the 1997
or 2008 Ozone NAAQS, because they are not currently designated as
nonattainment for those NAAQS. Those areas are designated variously
as either "attainment" or "attainment/unclassifiable" by EPA. *Id.*

pollutants in the atmosphere."). After EPA promulgates a NAAQS, or a revision thereof, each state must submit to EPA a SIP for the "implementation, maintenance, and enforcement" of the standard. 42 U.S.C. § 7410(a)(1). The contents of SIPs and the requirements they must fulfill with respect to each NAAQS depend upon the designations and classifications of an area. States must formally adopt SIPs or SIP revisions through state-level notice-and-comment rulemaking. *Id.* § 7410(a)(2).

EPA's role is to review the SIP or SIP revision. EPA "shall" approve the SIP or SIP revision if it meets the minimum requirements of the CAA. *Id.* § 7410(k)(3); *Train v. Nat. Res. Def. Council, Inc.,* 421 U.S. 60, 79 (1975). EPA cannot disapprove state regulations that form a SIP or SIP revision because EPA decides that the regulations should be more stringent, as long as the SIP meets the CAA requirements. *See Union Elec. Co. v. EPA*, 427 U.S. 246, 265 (1976); *Duquesne Light Co. v. EPA*, 166 F.3d 609, 611, 613 (3d Cir. 1999); Strelow Mem. 1 (Dec. 9, 1976) (JA__). "Thus, [the CAA] employs a cooperative federalism structure under which the federal government develops baseline standards that the states individually implement and enforce." *Bell v.*

*Cheswick Generating Station*, 734 F.3d 188, 190 (3d Cir. 2013) (internal quotation marks omitted). Once approved by EPA, the SIP is enforceable as Federal law. 42 U.S.C. §§ 7413, 7604(a).

### 3.    RACT requirements for ozone

EPA has consistently defined RACT as "the lowest emission limitation that a particular source is capable of meeting by the application of control technology that is reasonably available considering technological and economic feasibility." 57 Fed. Reg. 13498, 13541 (Apr. 16, 1992); 84 Fed. Reg. 20274, 20276 n.5 (May 9, 2019) (JA__). RACT limits are not meant to be the lowest achievable emissions rate for each particular source. Rather, "EPA expects States, to the extent practicable, to demonstrate that the variety of emissions controls adopted are consistent with the most effective level of combustion modification reasonably available for its individual affected sources." 57 Fed. Reg. 55620, 55625 (Nov. 25, 1992). This is an objective determination based on data and technical judgments relating to the category of sources.

SIP provisions for ozone nonattainment areas that are classified Moderate or higher and all areas located within an Ozone Transport

Region must satisfy certain specific RACT requirements aimed at reducing VOC and NOx emissions, in addition to the more general requirements of the CAA. First, the SIP must require RACT for each category of VOC sources in the nonattainment area covered by a "Control Technique Guideline." 42 U.S.C. § 7511a(b)(2)(A)–(B). "Control Technique Guidelines" are guidelines developed by EPA that define presumptive RACT-level controls for certain categories of VOC sources. Second, the SIP must require RACT for any other major stationary source of VOCs located in the nonattainment area. *Id.* § 7511a(b)(2)(C). Third, major stationary sources of NOx must meet the same RACT requirements as major stationary sources of VOCs. *Id.* § 7511a(f). Here, the applicable definitions of the major stationary sources are (1) a facility that emits or has the potential to emit NOx at a rate greater than 100 tons per year; and (2) a facility that emits or has the potential to emit VOCs at a rate greater than 50 tons per year. *See* 25 Pa. Code § 121.1 (defining "Major NOx emitting facility" and "Major VOC emitting facility").

## B.     Factual background

### 1.     The Pennsylvania presumptive RACT II SIP revision and conditional approval of the source-specific RACT process

Pennsylvania is subject to the specific RACT planning requirements for VOC and NOx emissions under both the 1997 and 2008 ozone NAAQS. 42 U.S.C. § 7502. Two Moderate nonattainment areas under the 1997 ozone NAAQS remained within Pennsylvania at the time of revocation of the 1997 ozone NAAQS. 40 C.F.R. § 81.339. Those areas remain subject to RACT for the 1997 ozone NAAQS, as required by EPA's anti-backsliding provisions.[3] *Id.* § 51.1105. In addition, because Pennsylvania is part of the Ozone Transport Region, it is required to implement RACT requirements statewide, even in those areas that are not designated as nonattainment for the 1997 or 2008

---

[3]     In 1997, EPA promulgated ozone NAAQS based on eight-hour average concentrations. 62 Fed. Reg. 38856 (July 18, 1997). In 2008, EPA revised the ozone NAAQS by making them more stringent. 73 Fed. Reg. 16436 (Mar. 27, 2008). As part of EPA's rule for implementing the 2008 ozone NAAQS, EPA announced that it revoked the 1997 ozone NAAQS and determined that certain nonattainment planning requirements, including RACT, continued to be in effect under applicable anti-backsliding requirements. 80 Fed. Reg. 12264, 12296 & n.75 (Mar. 6, 2015) (citing *S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 899 (D.C. Cir. 2007)).

Ozone NAAQS. The requirements are similar to those for ozone

nonattainment areas that are classified Moderate or higher in 42 U.S.C.

§ 7511a(b)(2), (f). *See* 42 U.S.C. § 7511c(b) (outlining SIP requirements

for states in the Ozone Transport Region). Thus, the same RACT

requirements apply in and throughout Pennsylvania for the 1997 and

2008 ozone NAAQS as a result of both the Commonwealth's inclusion in

the Ozone Transport Region and several areas being in nonattainment

for those NAAQS.

On May 16, 2016, Pennsylvania submitted a SIP revision intended

to satisfy specific RACT planning requirements for VOC and NOx

emissions for both the 1997 and 2008 ozone NAAQS for particular

source categories. 84 Fed. Reg. at 20274 (JA__). The SIP revision

consisted of new and amended regulations that Pennsylvania adopted

on April 23, 2016, entitled "Additional RACT Requirements for Major

Sources of NOx and VOCs" ("RACT II "), 25 Pa. Code §§ 129.96–

129.100, and amendments to 25 Pa. Code § 121.1, including related

definitions.

As relevant to these consolidated petitions, on May 9, 2019, EPA

approved or conditionally approved two distinct elements of the RACT

II rule—"presumptive" RACT and "source-specific" RACT. 84 Fed. Reg. at 20275, 20290 (JA __). Both apply to sources at major NOx emitting and major VOC emitting facilities throughout Pennsylvania. First, EPA approved "presumptive" RACT II which applies to defined categories of NOx and VOC sources. *Id.* at 20275, 20290 (JA __). Second, it also conditionally approved two Pennsylvania regulatory provisions that allowed facilities to propose to the Pennsylvania Department of Environmental Protection source-specific RACT, i.e., RACT specifically for a particular facility or, alternatively, set of facilities under common control in the same area. *Id.* at 20275, 20290 (JA __).

The first kind of source-specific RACT establishes conditions for facilities to seek Pennsylvania Department of Environmental Protection approval of NOx "averaging plans" as RACT. When a facility with a source otherwise subject to presumptive RACT for NOx under 25 Pa. Code § 129.96 cannot comply with that requirement, the facility can instead average NOx emissions on a facility- or system-wide basis. *See* 84 Fed. Reg. at 20275; 25 Pa. Code § 129.98(a), (d).

The second kind of source-specific RACT regulatory provision EPA conditionally approved is "case-by-case" RACT determinations for:

(1) NOx or VOC sources that are located at a major NOx or VOC emitting facility and otherwise subject to presumptive RACT II under 25 Pa. Code §§ 129.96 and 129.97, but that "cannot meet the applicable presumptive RACT requirement or RACT emission limit," 25 Pa. Code. § 129.99(a); (2) NOx sources with a potential emission rate equal to or greater than five tons of NOx per year and for which presumptive RACT II does not supply a standard, 25 Pa. Code § 129.99(b); and (3) VOC sources with a potential emission rate equal to or greater than two and seven-tenths tons of VOCs per year and for which presumptive RACT II does not supply a standard, 25 Pa. Code § 129.99(c). Sources subject to NOx averaging plans and case-by-case RACT determinations together are referred to as "source-specific" RACT which stands in contrast to presumptive RACT II under 25 Pa. Code § 129.97.

Under the May 9, 2019 conditional approval, the two source-specific RACT provisions, 25 Pa. Code §§ 129.98 and 129.99, would obtain full approval only after Pennsylvania fulfilled its commitment to submit to EPA as SIP revisions any NOx averaging plans and case-by-case RACT determinations within 12 months of EPA's conditional approval. 84 Fed. Reg. at 20275 (JA __).

### 2.    The source-specific SIP revisions

Pursuant to 25 Pa. Code. §§ 129.98 and 129.99, certain major NOx and VOC emitting facilities sought NOx averaging plans and case-by-case ozone RACT determinations from the appropriate state-level authorities, which in turn submitted these plans to EPA as SIP revisions. These consolidated petitions challenge EPA's approval of two sets of these determinations. The first, published in the Federal Register at 86 Fed. Reg. 48908 (Sept. 1, 2021) (the "First Rule") (JA __), approved SIP revisions submitted to EPA by the Pennsylvania Department of Environmental Protection that contained RACT determinations for sources at eight major NOx and/or VOC emitting facilities located in the Commonwealth. On November 1, 2021, EPA issued an additional final rule approving SIP revisions submitted by the Pennsylvania Department of Environmental Protection on behalf of the Philadelphia Air Management Services containing RACT determinations for sources at nine facilities. *See* 86 Fed. Reg. 60170 (Nov. 1, 2021) (the "Second Rule") (JA __).

Both the First and the Second Rule addressed whether EPA could approve each SIP revision under 42 U.S.C. § 7410(*l*), which bars

approval of a SIP revision if it would "interfere with any applicable requirements concerning attainment." *See* 86 Fed. Reg. at 48909-12 (JA __); 86 Fed. Reg. at 60172-74 (JA __). In the September 2021 and November 2021 rulemakings, EPA determined that the source-specific RACT II determinations "either retain[] an existing standard or establish[] a more stringent one." 86 Fed. Reg. at 48910 (JA __); 86 Fed. Reg. at 60172 (JA __). Therefore, because each source-specific RACT determination would not increase emissions, and would at least preserve or potentially improve status quo air quality, EPA concluded that the SIP revisions at issue would not interfere with any applicable requirement concerning attainment. 86 Fed. Reg. at 48911 (JA __); 86 Fed. Reg. at 60173 (JA __).

This determination follows EPA's practice—extending back more than fifteen years—of finding that SIP revisions comply with Section 7410(*l*) where they do not increase net emissions. *See* 86 Fed. Reg. at 48910-11 (JA __); 86 Fed. Reg. at 60172-73 (JA __). When a SIP revision relaxes pollution controls or otherwise may lead to an increase in emissions, EPA permits the submitting state to demonstrate compliance with § 7410(*l*) in two principal ways.

A state may either (1) submit an air quality analysis demonstrating that the revision will not interfere with attainment or any other requirement or (2) offset any expected increases with equal or greater emissions reductions, thereby maintaining "status quo air quality." 86 Fed. Reg. at 48910 (JA __); 86 Fed. Reg. at 60172 (JA __). Separately, if a state demonstrates that a SIP revision will not lead to an increase in emissions, EPA considers § 7410(*l*) satisfied. *See* 86 Fed. Reg. at 48911 (JA __); 86 Fed. Reg. at 60173 (JA __).

The Center submitted substantially identical comments to the notices proposing to approve the SIP revisions at issue in these petitions. *See* Center for Biological Diversity Public Comment (EPA-R03-OAR-2020-0597-009_attachment 1) (JA __); Center for Biological Diversity Public Comment (EPA-R03-OAR-2020-0598-0007_attachment 1) (JA __). In these comments, the Center argued that, notwithstanding "[t]he fact that [this rulemaking] *reduce[s]* NOx emissions," EPA and Pennsylvania had an affirmative duty to conduct modeling analyses for each facility. *See id.* (emphasis added). In the Center's view, the purpose of these analyses was to determine whether these reduced NOx emissions would nevertheless contribute to violations of the nitrogen

dioxide ("NO₂") NAAQS, a separate NAAQS issued by EPA under the

Clean Air Act. *See id.*

In October 2021, the Center submitted a petition for

reconsideration following the promulgation of the First Rule; it did not

submit a petition for reconsideration in connection with the Second

Rule. *See* Case No. 21-3023, Dkt. No. 33-4. In contrast with its

argument submitted during the comment period, this petition for

reconsideration principally argued that certain control technology

determined to be RACT emitted, and therefore *increased*, NOx

emissions and that EPA must model the impact of these emissions on

the NO₂ NAAQS. *See id.*

## STANDARD OF REVIEW

EPA's determinations are to be upheld unless "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with

law." 5 U.S.C. § 706(2)(A).[4] Review under this standard is highly

---

[4] The Center additionally cites to 42 U.S.C. § 7607(d)(9)(A). However, this subsection only applies to rulemakings listed in Section 7607(d)(1), and that provision does not generally include SIP approvals, governed by 42 U.S.C.§ 7410(k). *See* 42 U.S.C. § 7607(d)(1). While EPA may apply Section 7607(d) to "such other actions as the Administrator may determine," 42 U.S.C. § 7607(d)(1)(V), it did not do so here, *see, e.g.*, 86 Fed. Reg. 48908 (JA __). As a consequence, Section 7607(d) does not apply here.

deferential, presumes the validity of Agency actions, upholds them if the actions satisfy minimum standards of rationality, and prohibits a court from substituting its judgment for that of the Agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 496 n.18 (2004). Even a decision of "less than ideal clarity" should be upheld so long as "the agency's path may be reasonably discerned." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (internal quotation marks and citation omitted).

## SUMMARY OF ARGUMENT

The Court should deny the Center's consolidated petitions for review. EPA complied with the CAA, 42 U.S.C. § 7410(*l*), in both the First and Second Rules approving Pennsylvania's source-specific RACT determinations. Section 7410(*l*) provides, in relevant part, that "[t]he Administrator shall not approve a revision of a plan if the revision would interfere with any applicable requirement concerning attainment." The CAA does not define the term "interfere," and the Court should give that word its plain and ordinary meaning. Proceeding from that interpretation and the structure of the CAA, EPA reasonably

determined that a SIP revision that does not increase net emissions will not interfere with attainment requirements and satisfies 42 U.S.C. § 7410(*l*). Here, because EPA determined that the source-specific RACT II determinations would not increase emissions as compared to the relevant baseline, Section 7410(*l*) does not preclude approval of the SIP revisions at issue.

The Center's arguments to the contrary do not substantively address this interpretation or the case law. Instead, the Center argues that a SIP revision does not interfere with attainment of the NAAQS only where it ensures or advances attainment of the NAAQS. This argument relies on reading a single word—attainment—in isolation, and fails to interpret Section 7410(*l*) in light of the CAA as a whole.

The Center additionally contends that EPA can only demonstrate that a SIP revision will not interfere with the NAAQS by means of computer-based air-quality analyses. However, the plain meaning of Section 7410(*l*) does not require such a demonstration.

The Center has forfeited its remaining arguments by not raising them during the public comment period before the Agency. To the extent the Court considers the argument that EPA used the incorrect

comparator when it determined that the case-by-case RACT II controls in the First and Second Rules would not increase emissions, it should reject it. Specifically, EPA compared case-by-case RACT II controls to previously SIP-approved RACT requirements. This analysis follows the Pennsylvania administrative RACT II scheme.

To the extent the Court considers the Center's argument that a single piece of control technology at a single facility increases emissions, it should remand the record with respect to only that facility to enable EPA to address a technical misstatement in the First Rule.

## ARGUMENT

### I. EPA Reasonably Determined That SIP Revisions That Do Not Increase Emissions Do Not "Interfere" With Attainment Of The NAAQS Under Section 7410(*l*).

In the First and Second Rules, EPA approved SIP revisions that it concluded did not increase emissions of criteria pollutants or their precursors. EPA's judgment that such SIP revisions do not "interfere" with attainment of the NAAQS is consistent with the plain and ordinary meaning of the statute, its structure, and EPA's past practice in conducting analyses under Section 7410(*l*).

The Center's argument to the contrary fails to take into account the meaning of the word "interfere." As a result, its interpretation of Section 7410(*l*)—that only SIP revisions that will provide for attainment or advancement of the NAAQS comply with the provision—finds no support in dictionary definitions or case law. Similarly, its contention that a Section 7410(*l*) analysis must include computer modeling is based on this misinterpretation. Finally, as four circuit courts have concluded, EPA's emissions-focused Section 7410(*l*) analysis is not arbitrary and capricious.

### A.   The plain text of Section 7410(*l*) and the structure of the CAA support EPA's interpretation of Section 7410(*l*).

The CAA, 42 U.S.C. § 7410(*l*), provides, in relevant part that "[t]he Administrator shall not approve a revision of a plan if the revision would interfere with any applicable requirement concerning attainment." For over fifteen years, EPA has interpreted Section 7410(*l*) as permitting approval of a SIP revision as long as "emissions in the air are not increased," thereby preserving "status quo air quality." *Ky. Res. Council, Inc. v. EPA,* 467 F.3d 986, 991, 996 (6th Cir. 2006); *see also Indiana v. EPA*, 796 F.3d 803, 806 (7th Cir. 2015) (same); *Ala. Env't*

*Council v. EPA*, 711 F.3d 1277, 1292-93 (11th Cir. 2013) (same);

*Galveston-Houston Ass'n for Smog Prevention v. EPA*, 289 F. App'x 745,

754 (5th Cir. 2008) (hereinafter "*GHASP*") (same). This understanding

turns on "interfere," which EPA interprets to mean "to hinder or make

worse." *Ky. Res. Council*, 467 F.3d at 995 (noting that EPA argued that

"interfere" "means 'to hinder or make worse'").

Because the Act does not define the term "interfere," it must be

"construe[d] . . . in accordance with its ordinary or natural meaning."

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 908 (3d Cir. 2021)

(internal quotation marks and citation omitted). This Court uses

"dictionary definitions to determine the ordinary meaning of a word."

*Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 200 (3d Cir. 2015)

(internal quotation marks and citation omitted).

Here, the dictionary definitions uniformly support EPA's

interpretation of "interfere." "To *interfere* is to hamper, frustrate, or

meddle in a deleterious way." Bryan A. Garner, Garner's Dictionary of

Legal Usage 570 (3d ed. 2011); *see also* Merriam-Webster's Collegiate

Dictionary 652 (11th ed. 2005) ("to interpose in a way that hinders or

impedes"); Webster's New World Dictionary Third College Edition 704

(1988) (defining "interfere with" as "to hinder"). Therefore, according to the plain meaning of the word "interfere," a SIP revision satisfies Section 7410(*l*) if it does not hamper, frustrate, hinder, or impede "any applicable requirement concerning attainment." The D.C. Circuit has similarly interpreted Section 7410(*l*), concluding that it precludes actions "that would hinder an area's ability" to comply with applicable requirements. *S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 900 (D.C. Cir. 2006) (hereinafter, "*SCAQMD*"), *decision clarified on denial of reh'g on other grounds*, 489 F.3d 1245 (D.C. Cir. 2007).

This interpretation additionally reflects Section 7410(*l*)'s role in the CAA. Many other provisions impose stringent requirements on states to reduce precursor ozone emissions. For example, Section 7511c obligates Pennsylvania, as a part of the Ozone Transport Region, to require vehicle inspection and maintenance programs and implement RACT for sources of VOCs covered by a control techniques guideline. *See* 42 U.S.C. § 7511c(b). By contrast, Section 7410(*l*) is an "antibacksliding" provision that does not impose substantive obligations, but instead erects "a high threshold for *removing* controls from a SIP." *SCAQMD*, 472 F.3d at 900 (emphasis added); *see also*

*Indiana*, 796 F.3d at 806 (describing Section 7410(*l*) as an

"'antibacksliding' provision").

EPA implements this interpretation of Section 7410(*l*) by

approving SIP revisions if they do not increase net emissions. In doing

so, "the level of rigor needed for any CAA [Section 7410(*l*)]

demonstration will vary depending on the nature and circumstances of

the revision." 86 Fed. Reg. at 48910; 86 Fed. Reg. at 60172. Where EPA

anticipates that a SIP revision may increase emissions, it typically

requires that a state either (1) submit air quality analysis to

demonstrate that the revision would not interfere with any applicable

requirement or (2) substitute equivalent or greater emissions reductions

in order to preserve status quo air quality. *See* 86 Fed. Reg. at 48910

(JA __); 86 Fed. Reg. at 60172 (JA __); *see also Ky. Res. Council*, 467

F.3d at 995 (denying petition challenging under Section 7410(*l*) SIP

revision approval where the revision would not increase net emissions).

However, where the SIP revision does not relax or remove any

pollution controls—and therefore does not involve *any* increase in

emissions—such requirements are unnecessary, because there is no

reason to believe that such a SIP revision will *hinder* attainment, or, in

other words, that such a SIP revision would make air quality worse. *See* 86 Fed. Reg. at 48911; 86 Fed. Reg. at 60173; *see also WildEarth Guardians v. EPA*, 759 F.3d 1064, 1074 (9th Cir. 2014) ("[Petitioner] identifies nothing in Nevada's SIP that weakens or removes any pollution controls. And even if the SIP merely maintained the status quo, that would not interfere with the attainment or maintenance of the NAAQS.").

This emissions-focused implementation of Section 7410(*l*) is reasonable, as four circuit courts have held. For example, in *Kentucky Resources Council*, EPA approved a SIP revision for the Northern Kentucky Area in light of that area's attainment of the 1-hour ozone NAAQS. 467 F.3d at 989-90. Notwithstanding the fact that the area had not attained the 8-hour ozone NAAQS, the challenged SIP relaxed certain pollution control measures before Kentucky submitted an attainment demonstration. *Id.* at 989-90, 994. Petitioners argued that this approval violated Section 7410(*l*), because EPA could not know what effect the SIP revision would have on attainment of the 8-hour ozone NAAQS before Kentucky submitted the attainment demonstration. *Id.* at 994. The Sixth Circuit rejected this argument—

stating that "if the statute on its face compels any reading . . . , it surely is not the reading suggested by Petitioner"—and approved EPA's interpretation. *Id.* at 995-96. Because Kentucky included off-setting emissions reductions in its SIP revision and therefore did not increase net emissions, the court denied the petition for review. *Id.* at 996-99; *see also Indiana*, 796 F.3d at 812-13 (approval of SIP revision that EPA determined would not increase net emissions was not arbitrary and capricious); *WildEarth Guardians*, 759 F.3d at 1074 (same); *GHASP*, 289 F. App'x at 754 (same).

EPA applied the same interpretation of Section 7410(*l*) in approving the SIP revisions at issue in these consolidated petitions. In both the First and Second Rules, EPA compared the proposed source-specific ozone RACT II determination to the previously SIP-approved ozone RACT[5]—if any—and approved the SIP revisions that reflected the strictest RACT requirements. *See* 86 Fed. Reg. at 48909 (JA __); 86

---

[5] By "previously SIP-approved RACT" or "prior SIP-approved RACT permit requirements" EPA refers to the RACT permit requirements, if any, for particular emission sources that EPA had already approved into the SIP prior to EPA's May 9, 2019 approval and conditional approval of Pennsylvania's RACT II regulations. Such prior RACT requirements may have been presumptive or source-specific in nature under Pennsylvania's first set of RACT regulations.

Fed. Reg. at 60171(JA __). Therefore, the case-by-case RACT II determinations approved in both SIP revision approvals are at least as stringent as the previously SIP-approved RACT. Moreover, in certain facilities, emissions sources ceased operating between the previous SIP-approved RACT and the source-specific RACT II determinations, further reducing emissions. *See* 86 Fed. Reg. at 48911 (JA __). Therefore, because the First and Second Rules have not "weaken[ed] or remove[d] pollution controls," 86 Fed. Reg. at 48911 (JA __); 86 Fed. Reg. at 60173 (JA __), EPA concluded that approval of the revision did not violate Section 7410(*l*), *see WildEarth Guardians*, 759 F.3d at 1074.

## B. The Center's argument that Section 7410(*l*) requires attainment of the NAAQS finds no support in definitions, the structure of the CAA, or the case law.

The Center argues that Section 7410(*l*) *requires* a state to submit—or EPA to conduct—air quality modeling in order to prove noninterference with any applicable requirement regarding attainment. Principally, the Center contends that (1) Section 7410(*l*) refers to "applicable requirement[s] concerning attainment"; (2) "attainment" refers to attainment of the NAAQS; (3) EPA erred by looking to changes in emissions in determining whether the First and Second Rules would

interfere with any requirements concerning attainment because (4) only air quality modeling can determine whether a SIP revision will lead to attainment of the NAAQS. Because the CAA does not require any specific Section 7410(*l*) analysis, the Court should reject the Center's argument.

### 1. The Center reads the word "attainment" in isolation from the rest of Section 7410(*l*) and the CAA as a whole.

Though it does not provide a clear interpretation in its brief, the Center appears to contend that Section 7410(*l*) precludes EPA from approving a SIP revision for a particular criteria pollutant unless it shows that the revision will guarantee—or at least take significant steps towards—attainment of the NAAQS. *See, e.g.*, Br. at 21 ("[S]tatus quo emissions in no way guarantee that the ambient air quality will be below the NAAQS such that there is attainment of the NAAQS."); *id.* at 32 ("Congress mandated in section [7410(*l*)] that EPA ensure that ambient concentrations are kept below the NAAQS in order to not 'interfere with attainment.'"); *id.* at. 33 ("EPA's interpretation of [Section 7410(*l*),] which only requires EPA to evaluate emissions, ignores the fact that if emissions stay the same or even decrease, a SIP

can still *fail to ensure attainment* . . . .") (emphasis added). However, this interpretation of Section 7410(*l*) fails to take into account, and cannot be squared with, the plain meaning of the word "interfere." *See supra* at 20-22. Moreover, such an interpretation makes no sense as applied to areas that are not in nonattainment for the NAAQS. *See supra* at 5 n.2.

Instead, the Center's interpretation relies exclusively on the word "attainment" in Section 7410(*l*). However, "it is a 'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.'" *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am.*, 523 U.S. 653, 657 (1998) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). While EPA does not dispute that "attainment," as used in Section 7410(*l*), refers to attainment of the NAAQS, *see* Br. at 28-29, any interpretation of this provision must take into account the chosen verb, "interfere." Because the Center does not do so, this Court should reject its interpretation.

## 2. Section 7410(*l*) does not require air quality modeling.

Based on its misunderstanding of this provision, the Center erroneously concludes that Section 7410(*l*) requires computer modeling to demonstrate noninterference with the NAAQS. Br. at 31-32. This argument presupposes that EPA can only approve a SIP revision if that revision ensures or advances attainment of the NAAQS; however, this interpretation is at odds with the provision's plain meaning.

Moreover, the Center's interpretation again fails to take into account the broader structure of the CAA. Where Congress intended to require air quality modeling analysis, it stated so explicitly. For example, as the Center itself notes, Section 7410(a)(2)(K)(i) mandates that SIPs "provide for . . . the performance of such air quality modeling as [EPA] may prescribe for the purpose of predicting the effect on ambient air quality of any emissions of any air pollutant for which [EPA] has established a national ambient air quality standard." Additionally, the attainment demonstration required by Section 7511a(c)(2)(A) "must be based on photochemical grid modeling or any other analytical method determined by the Administrator . . . to

be at least as effective." *Id.*[6] That Congress did not require such

analysis in Section 7410(*l*) shows that this provision does not *require* air

quality modeling.

### 3. EPA's emissions-focused Section 7410(*l*) analysis ensures noninterference with the NAAQS.

EPA reasonably determined in the First and Second Rules that,

because the SIP revisions at issue would not increase emissions, the

source-specific RACT II determinations did not violate Section 7410(*l*).

The Center concedes that "the statute is silent concerning *how* the EPA

must determine if the SIP would interfere" with attainment. Br. at 40.

Nonetheless, the Center contends that EPA's emissions-focused

analysis cannot satisfy Section 7410(*l*), because multiple factors affect

ambient air quality in addition to emissions, such as "meteorology,

topography, and atmospheric chemistry, as well as the nature of how

the emissions are emitted." Br. at 31. But here, none of these factors

have changed, and so if emissions remain the same, there is no reason

---

[6] "Photochemical grid modeling is a form of computer air quality modeling that evaluates how emissions from various sources combine in the atmosphere and predicts the concentration of pollutants that likely will result." *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 220 (4th Cir. 2001).

to believe the SIP revision will make air quality *worse*. *WildEarth Guardians*, 759 F.3d at 1074 ("[Petitioner] identifies nothing in Nevada's SIP that weakens or removes any pollution controls. And even if the SIP merely maintained the status quo, that would not interfere with the attainment or maintenance of the NAAQS."). The Center's argument that a SIP revision that permits no net increase in emissions may interfere with the $NO_2$ NAAQS promulgated since Pennsylvania last made RACT determinations also fails for this reason. *See* Br. at 33-34. In any event, no area in Pennsylvania is in nonattainment for the $NO_2$ NAAQS. *See* 77 Fed. Reg. 9532 (Feb. 17, 2012).

The Center's power plant example reveals the Center's misunderstanding of Section 7410(*l*). According to the Center, the same level of emissions might, depending on the weather and topography, lead to $NO_2$ concentrations in the ambient air at a level above the design value (the statistic that describes the air quality status of a location that EPA uses to designate and classify attainment) at certain times but not others. Br. at 32-33. There is no reason to believe that a SIP revision that permits such emissions would make air quality *worse* than the previous SIP, if the emissions remain constant. Even if the

weather might lead to variations in the concentrations at different times, the SIP revision itself would not worsen air quality. Moreover, a single ambient air concentration above the design value does not necessarily determine whether an area has or has not attained the NAAQS. Rather, EPA classifies an area as having attained the NO$_2$ NAAQS or not by calculating the "the three-year average of the annual 98th percentile of the daily maximum 1-hour average concentration is less than or equal to 100 ppb." 40 C.F.R. § 50.11.

In *Indiana*, the Seventh Circuit rejected a similar challenge to EPA's Section 7410(*l*) analysis. In that case, EPA determined that Section 7410(*l*) allowed EPA to approve a SIP revision relaxing a pollution control measure because the state had identified off-setting emissions reductions. 796 F.3d at 808. The petitioner argued that EPA could not approve the revision without an air quality analysis. *Id.* at 813. The court rejected this argument—and held that EPA's approval was not arbitrary and capricious—because the emissions-focused analysis was reasonable and the petitioner had "not shown that the agency's conclusion [that the revision did not interfere with attainment] would have been any different" had the SIP included air quality

modeling. *Id.* Similarly, the Center has not done so here, and the Court should reject its argument.

In the First and Second Rule, EPA reasonably determined, in line with the case law, *see WildEarth Guardians*, 759 F.3d at 1074, that where a SIP revision does not increase emissions, it similarly does not interfere with attainment, *see* 86 Fed. Reg. at 48911 (JA __); 86 Fed. Reg. at 60173 (JA __). EPA's analysis—which compared the previously SIP-approved RACT determination with the source-specific RACT II determination—refutes the Center's argument that EPA did not perform a Section 7410(*l*) analysis. *See, e.g.*, Br. at 51, 52.[7] Because "[a] reviewing court 'must generally be at its most deferential' when reviewing factual determinations within an agency's area of special expertise," *Sw. Pa. Growth All. v. Browner*, 121 F.3d 106, 117 (3d Cir. 1997) (Alito, J.), this Court should reject the Center's challenge to EPA's

---

[7] In support of this argument, the Center points to a citation in the First and Second Rules in which EPA explains that it did not put forward "a detailed [Section 7410(*l*)] analysis *at the proposal stage*." 86 Fed. Reg. at 48910 (JA __) (emphasis added); 86 Fed. Reg. at 60172 (JA __). Both responses to the Center's comments in the First and Second Rule go on to explain the basis for EPA's approval. *See* 86 Fed. Reg. at 48910-12 (JA __); 86 Fed. Reg. at 60172-74 (JA __).

determination of the appropriate methodology for analyzing whether a
SIP revision interferes with attainment.

## II.    The Center Has Not Preserved For Review Its Argument That The SIP Revisions Increase Emissions.

The Center failed to raise its arguments that the SIP revisions
approved in the First and Second Rules increase emissions during the
public comment period; it has therefore forfeited these arguments. To
the extent the Court considers the Center's argument that EPA should
have compared case-by-case emissions to presumptive RACT II, it
should reject this assertion, because it fails to take into account the
actual suite of rules EPA approved as RACT II. To the extent the Court
is inclined to consider the Center's argument that new control
technology determined to be source-specific RACT II increases
emissions, it should remand the record on this point to EPA.

### A.    The Center failed to raise any arguments before EPA that the SIP revisions at issue increased emissions, and has therefore forfeited these contentions.

The Center did not raise any argument during the public comment
periods that the SIP revisions approved in the First and Second Rules
increased emissions. Instead, in its comments, the Center made one

argument: notwithstanding the fact that the final approval of these SIP

revisions *decreased* NOx emissions, Section 7410(*l*) prohibited EPA from

approving the final rules because the facilities at issue might still emit

NOx that would contribute to nonattainment. *See* Center for Biological

Diversity Public Comment (EPA-R03-OAR-2020-0597-009_attachment

1) (JA __); Center for Biological Diversity Public Comment (EPA-R03-

OAR-2020-0598-0007_attachment 1) (JA __). The Center addresses this

objection in Section A of its brief. After EPA issued the First Rule, the

Center petitioned for reconsideration of that action because, it argued,

some of the VOC control technology determined to be RACT itself

emitted NOx. *See* Case No. 21-3023, Dkt. No. 33-4. The Center never

petitioned for reconsideration of the Second Rule. Nor has it ever, in

any form before the Agency as it relates to the First and Second Rules,

argued that the source-specific RACT determinations increased

emissions compared to presumptive RACT II. As a result, these

arguments are not properly before this Court.

"It is well established that issues not raised in comments before

the agency are waived and this Court will not consider them." *Nat'l*

*Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002), *supplemented*

*sub nom. In re Kagan*, 351 F.3d 1157 (D.C. Cir. 2003); *see also Sw. Pa. Growth All.*, 121 F.3d at 112 (Alito, J.) ("Generally, federal appellate courts do not consider issues that have not been passed on by the agency whose action is being reviewed" (internal quotation marks, citation, and ellipsis omitted)). "Indeed, there is a near absolute bar against raising new issues—factual or legal—on appeal in the administrative context." *Nat'l Wildlife Fed'n*, 286 F.3d at 562. An administrative agency must have an opportunity to respond to any comments and explain its reasons for the action taken. *See Dir., Office of Workers' Comp. Programs v. N. Am. Coal Corp.*, 626 F.2d 1137, 1143 (3d Cir. 1980). This Court "follow[s] this approach because it will: (1) avoid premature interruption of the administrative process, (2) allow the agency to develop the necessary factual background, (3) give the agency the first chance to exercise its discretion, (4) properly defer to the agency's expertise, (5) provide the agency with an opportunity to discover and correct its own errors, and (6) deter the deliberate flouting of administrative processes." *Kleissler v. U.S. Forest Serv.*, 183 F.3d 196, 201 (3d Cir. 1999) (internal quotation marks and citation omitted).

The Center did not raise these arguments during the public comment period. Therefore, they may not be considered now, as the Center is well-aware. On February 24, 2022, the Center moved for a stay of briefing and an order directing EPA to respond to the petition for reconsideration *because* it could not otherwise raise those arguments in these consolidated proceedings. *See* Case No. 21-3023, Dkt. No. 31 at 2-3, 5. As the Center recognized in its motion for a stay, the argument raised in its petition for reconsideration may only be considered if and when EPA denies the petition. *Cf. Util. Air Regul. Grp. v. EPA*, 744 F.3d 741, 747 (D.C. Cir. 2014) (applying 42 U.S.C. § 7607(d)(7)(B) and concluding that "[o]bjections raised for the first time in a petition for reconsideration must await EPA's action on that petition"); *see also Appalachian Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001) (petitioner may not press arguments before a court "raised at the wrong time or in the wrong docket"). By contrast, the Center has never raised its second argument—that EPA compared Pennsylvania Department of Environmental Protection's and Philadelphia Air Management Services' source-specific RACT determinations to the wrong baseline—before the

Agency in *any* form and has therefore forfeited it. *See N. Am. Coal Corp.*, 626 F.2d at 1143.

## B. Presumptive RACT II is not the proper baseline against which case-by-case RACT II should be compared.

EPA properly compared the case-by-case RACT II determinations against the previously SIP-approved limitations. At the time EPA approved presumptive RACT II, it also conditionally approved the NOx averaging plan and case-by-case RACT processes. *See* 84 Fed. Reg. at 20290 (JA __). The NOx averaging plan process, codified in 25 Pa. Code § 129.98, permits facilities with a source otherwise subject to presumptive RACT II for NOx under 25 Pa. Code § 129.96 that cannot comply with that requirement to instead average NOx emissions on a facility- or system-wide basis. *See* 84 Fed. Reg. at 20275 (JA __); 25 Pa. Code § 129.98(a), (d). By contrast, the case-by-case RACT II process, codified in 25 Pa. Code § 129.99, permits facilities with the following features to propose RACT II determinations for a particular source: (1) NOx or VOC sources that are located at a major NOx or VOC emitting facility and subject to presumptive RACT II but that "cannot meet the applicable presumptive RACT requirement or RACT emission limit," 25

Pa. Code. § 129.99(a); (2) NOx sources with a potential emission rate equal to or greater than five tons of NOx per year and for which presumptive RACT II does not supply a standard, 25 Pa. Code § 129.99(b); and (3) VOC sources with a potential emission rate equal to or greater than two and seven-tenths tons of VOCs per year and for which presumptive RACT II does not supply a standard, 25 Pa. Code § 129.99(c).

In determining whether to approve Pennsylvania's case-by-case RACT II determinations for sources subject to—but unable to comply with—presumptive RACT II under 25 Pa. Code § 129.99(a), EPA looked to the prior SIP-approved RACT requirements in the facilities' permits as a comparator. 86 Fed. Reg. at 48909; 86 Fed. Reg. at 60171-72. Based on this comparison, EPA concluded that Pennsylvania's case-by-case RACT II determinations in the First and Second Rules did not lead to a net increase in emissions. 86 Fed. Reg. at 48909 (JA __); 86 Fed. Reg. at 60171 (JA __). This analysis follows the scheme set up in 25 Pa. Code § 129.99: subsection (g) provides that any case-by-case RACT II determinations would supersede the requirements applicable to that facility as of April 23, 2016—the date Pennsylvania implemented the

RACT II provisions—unless the prior RACT permit requirements were stricter, in which case those requirements would remain in place. *See* 25 Pa. Code § 129.99(g); 84 Fed. Reg. at 20274 (JA __) (25 Pa. Code § 129.99 adopted on April 23, 2016). In other words, the Pennsylvania case-by-case RACT II regulation provides that such determinations supersede the previously-approved RACT determinations—*not* presumptive RACT II.

Therefore, Pennsylvania Department of Environmental Protection's April 23, 2016 suite of RACT II regulations approved and conditionally approved by EPA *did not apply* presumptive RACT II to facilities that obtained case-by-case RACT II determinations. Such a reading of this provision makes perfect sense. Only facilities that could not comply with, or were not subject to, presumptive RACT II could obtain case-by-case RACT II determinations. It would defy logic to apply presumptive RACT II to these sources unless and until Pennsylvania made and EPA approved a case-by-case determination. For this reason, EPA did not "treat the [presumptive RACT II] standards as if they did not exist," Br. at 52; rather, they did not apply to the sources subject to case-by-case RACT.

The Center does not generally dispute that the case-by-case RACT II determinations at issue in this case do not increase NOx emissions as against the RACT permit requirements previously incorporated into the SIP.[8] Instead, the Center contends that presumptive RACT II applied to these sources pending approval of the SIP revisions containing case-by-case RACT II determinations. The Center further contends that some—but not all—of the case-by-case RACT II determinations relax pollution control measures when compared to a presumptive RACT II baseline. *See* Br. at 45-53. But at the same time EPA approved presumptive RACT II, the Agency also conditionally approved Section 129.99, including Section 129.99(g), which makes clear that presumptive RACT II does *not* apply to sources seeking source-specific RACT determinations. Therefore, presumptive RACT II does not provide the correct baseline for determining whether the First and Second Rules increased emissions, and this Court should reject the Center's arguments to the contrary.

---

[8] The one exception to which the Center points is the thermal oxidizer installed in the Roystone Compressor Station. *See infra* Section II.C.

Additionally, the Center's argument has no application to (1) sources subject to NOx averaging plans,[9] (2) sources for which 25 Pa. Code § 129.97 did not provide presumptive RACT,[10] or (3) facilities to which the Center did not raise an objection during the public comment period. With respect to sources subject to NOx averaging plans, the Center does not even contend that emissions from *those* sources should be compared to presumptive RACT II to determine if they lead to an increase in emissions, *see* Br. at 46 (looking only to the case-by-case RACT determinations governed by Section 129.99, and not to those in Section 129.98), and has waived any argument to the contrary, *see United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (arguments not

───────────────

[9] The facilities that contain these sources are: (1) Fairless Energy, LLC, Technical Support Document at 38 (EPA-R03-OAR-2020-0597-004) ("First Rule TSD") (JA __); (2) Grays Ferry Cogeneration Partnership—Schuylkill Station, Technical Support Document at 19 (EPA-R03-OAR-2020-0598-004) ("Second Rule TSD") (JA __); (3) Vicinity Energy Philadelphia—Schuylkill Station, *id.*; and (4) Philadelphia Energy Solutions Refining and Marketing LLC (for certain heaters and boilers), *see id.* at 36 (JA __).

[10] The facilities that contain these sources are: (1) Kovatch Mobile Equipment Corp., First Rule TSD at 24 (JA __); (2) Letterkenny Army Depot, *id.* at 35 (JA __)*;* (3) Volvo Construction Equipment North America, *id.* at 12 (JA __)*;* (4) Carmeuse Lime, Inc., *id.* at 22 (JA __); (5) Kinder Morgan Liquids Terminals, LLC, Second Rule TSD at 22 (JA __); (6) Philadelphia Energy Solutions Refining and Marketing LLC, *id.* at 31-33 (JA __); and (7) Philadelphia Shipyard, Inc., *id.* at 39 (JA __).

raised in a party's opening brief are waived). Therefore, if the Court reaches this argument and agrees with the Center, the Court should deny the petitions as to these facilities.

In any event, such plans necessarily do not lead to a net increase in emissions even compared to presumptive RACT II, as aggregate emissions from sources subject to such a plan cannot exceed emissions "by the group of included sources if each source complied with [presumptive RACT II] on a source-specific basis." 25 Pa. Code § 129.98(d). With respect to sources that 25 Pa. Code § 129.97 did not supply presumptive RACT II, no presumptive RACT II comparator exists.

Finally, in its comment on the Second Rule, the Center only objected to the approval of five of the nine facilities at issue. *Compare* 86 Fed. Reg. at 60171, *with* Center for Biological Diversity Comment (EPA-R03-OAR-2020-0598-0007_attachment_1) (JA__). As a result, it has forfeited *any* challenges directed to *other* facilities addressed in the Second Rule,[11] *see supra* at 34-37, including to two of the facilities

---

[11] These facilities are: (1) AdvanSix Resins & Chemicals LLC—Frankford Plant; (2) Naval Surface Warfare Center—Philadelphia

addressed in its brief: AdvanSix Resins & Chemicals LLC—Frankford Plant and Newman and Company, Inc.

### C. If the Court reaches the Center's argument regarding the thermal oxidizer at the Roystone Compressor Station, the Court should remand the record solely with respect to that facility without vacatur to allow EPA to correct a misstatement and provide further explanation.

The Center argues that some pollution controls approved as RACT in the First and Second Rules themselves emit criteria pollutants, contrary to EPA's statements in its SIP approvals. *See* Br. at 43-44. The Center is correct that the First Rule contains an inadvertent misstatement. In the event the Court reaches this argument, it should permit EPA to fix its technical misstatement.

"A reviewing court has inherent power to remand a matter to the administrative agency." *Loma Linda Univ. v. Schweiker*, 705 F.2d 1123, 1127 (9th Cir. 1983). "Administrative reconsideration is a more expeditious and efficient means of achieving adjustment of agency policy than is resort to the federal courts." *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Pennsylvania v. ICC*, 590

---

Division; (3) Newman and Company, Inc.; and (4) Philadelphia Shipyard Inc.

F.2d 1187, 1194 (D.C. Cir. 1978)). As the D.C. Circuit stated, "[w]e commonly grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993).

Here, the Court should grant a limited remand of the record to permit EPA to address whether the addition of a thermal oxidizer at the National Fuel Gas Supply Corporation-Roystone Compressor Station (the "Roystone Compressor Station") would interfere with attainment of any NAAQS. The Center is correct that the First Rule inaccurately states that "EPA's approval of the Pennsylvania CbC VOC RACT II SIP revisions for sources at [among other facilities, the Roystone Compressor Station,] does not involve any $NO_X$ emissions . . . and does not result in an increase in . . . $NO_X$ emissions," 86 Fed. Reg. at 48911. *See* Decl. of Andrea Bain ¶¶ 7-8. However, because the Center did not raise this argument before the Agency during the public comment period, EPA did not have an opportunity to consider it as part of its rulemaking. Allowing EPA to correct its misstatement and respond to the Center's argument would clarify the record and allow the Court to

assess the Agency's rationale. On remand, EPA anticipates that it can provide explanation as to why the addition of a thermal oxidizer at the Roystone Compressor Station would not interfere with any applicable requirement concerning attainment. *Id.* ¶ 9. Because EPA intends to take public comment on its rationale, the Agency anticipates the process will take nine months. *Id.* ¶ 12.

However, this remand should be limited to the Roystone Compressor Station. The Center's argument that certain case-by-case RACT II determinations increase criteria pollutants or their precursors applies only to two units at a single facility out of the seventeen facilities at issue in these consolidated petitions. The Center does not identify *any* other newly-added control technology that emits a criteria pollutant, and EPA is aware of none.

## CONCLUSION

For the foregoing reasons, the petitions for review should be denied.

Of Counsel:

Respectfully submitted,

ELIZABETH PETTIT
U.S. Environmental Protection
Agency
Washington, D.C.

NEIL R. BIGIONI
JACOBINE DRU
Office of Regional Counsel
U.S. Environmental
Protection Agency
Philadelphia, PA

August 5, 2022

s/ *Jeffrey Hughes*

TODD KIM
*Assistant Attorney General*
JEFFREY HUGHES
*Attorney*
Environment and Natural Resources
Division
U.S. Department of Justice
Post Office Box 7411
Washington, D.C. 20044
(202) 532-3080
jeffrey.hughes@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify:

1.     This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Rule 32(f), this document contains 9,106 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

3. I am an attorney with the United States Department of Justice in this matter and, therefore, am not required to be a member of the Third Circuit Bar for purposes of this action.

4. I certify that, pursuant to Third Circuit Local Appellate Rule 31.1(c), the electronic version of the brief has been scanned for computer viruses using the most recent version of Microsoft Windows Defender and, according to that program, is free of viruses.

s/ *Jeffrey Hughes*
JEFFREY HUGHES

Counsel for Respondents

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I electronically filed the

foregoing using the court's CM/ECF system, which will send notification

of such filing to all counsel of record.

s/ *Jeffrey Hughes*
JEFFREY HUGHES

Counsel for Respondents

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>        Petitioner,<br><br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY et al.,<br><br>        Respondents. | Nos. 21-3023; 22-1012 |

## DECLARATION OF ANDREA BAIN

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.  I, Andrea Bain, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge, information contained in the records of the United States Environmental Protection Agency ("EPA" or "the Agency"), or information supplied to me by EPA Region 3 employees under my supervision and in other EPA offices in Region 3.

2.  I understand that EPA is requesting that the Court remand a portion of the record without vacatur in the above-captioned consolidated

petitions for review in the event the Court concludes that the Center for Biological Diversity ("Center") has not forfeited an argument about the emissions from certain pollution controls. This declaration is filed in support of that request. The purpose of this declaration is to explain: (1) considerations informing EPA's request; (2) EPA's rationale for requesting remand; (3) the scope of EPA's requested remand; and (4) the rulemaking process that EPA expects to follow on remand.

3.  I am the Deputy Division Director of the Air & Radiation Division for EPA, Region 3. I have held this position permanently since February of 2022. Prior to that I served as a Section Chief in the Data, Support and Prevention Branch of the Enforcement and Compliance Assistance Division in Region 3 from April 2020 to February 2022. Prior to that I held several other positions as an Environmental Scientist in Region 3. I hold a Bachelor of Science in Environmental Science from Florida A&M University.

4.  Region 3 is responsible for execution of EPA programs in Delaware, the District of Columbia, Maryland, Pennsylvania ("Pennsylvania" or "Commonwealth"), Virginia, and West Virginia. The Region 3 Air & Radiation Division is responsible for the administrative development of

the final rule entitled "Approval and Promulgation of Air Quality Implementation Plans; Pennsylvania; Reasonably Available Control Technology Determinations for Case-by-Case Sources Under the 1997 and 2008 8-Hour Ozone National Ambient Air Quality Standards" and published in the Federal Register on September 1, 2021 at 86 Fed. Reg. 48908 ("First Rule"). The Region 3 Air & Radiation Division would be primarily responsible for any federal action taken in response to a remand with respect to the Reasonably Available Control Technology ("RACT") analysis and determination related to control equipment at the emissions sources covered by the First Rule.

5. RACT consists of technologically or economically feasible emission controls or limits for emission sources of ozone precursors. Region 3 is responsible for reviewing and approving or disapproving Pennsylvania's RACT determinations for emission sources at various facilities when the state submits such determinations to EPA as revisions to Pennsylvania's State Implementation Plan ("SIP").

6. In the First Rule, EPA approved eight Pennsylvania SIP revisions, which included case-by-case RACT determinations to control emissions of ozone precursors—nitrogen oxides ("$NO_x$") and/or volatile organic

compounds ("VOC")—from emission sources at eight separate facilities as required by the Clean Air Act ("CAA"), 42 U.S.C. §§ 7511a(f) and 7511c(b)(2). Only one RACT determination at one facility among the eight is relevant to this request for partial remand of the record without vacatur—the addition of a thermal oxidizer to control VOCs at National Fuel Gas Supply Corporation's Roystone Compressor Station ("Roystone") in Warren County, Pennsylvania.

7. After the publication of the First Rule in September 2021, the Center petitioned Region 3 for reconsideration of that rule in October 2021. The petition for reconsideration argued that EPA was not correct in stating that "for certain sources . . . "the rule making 'does not involve any $NO_x$ emissions,'" because, as an example, the thermal oxidizer determined to be RACT for VOCs at the National Fuel Gas Supply Corporation-Roystone Compressor Station (the "Roystone Compressor Station") emits $NO_x$. Case No. 21-3023, Dkt. No. 33-4. Region 3 has taken the Center's petition for reconsideration under review.

8. In its review of the record in this matter, EPA has determined the statement in the First Rule that "EPA's approval of the Pennsylvania CbC VOC RACT II SIP revisions for sources at [Roystone] does not

involve any $NO_x$ emissions and does not result in an increase in $NO_x$ emissions," 86 Fed. Reg. at 48911 is inaccurate.

9. EPA anticipates that it can provide additional explanation to describe why the RACT determination at issue meets statutory requirements. It further anticipates that this explanation can be based on the materials that are part of the administrative record for the Final Rule.

10. If the Court reaches the merits of the challenge to EPA's approval of the Roystone Compressor Station RACT determinations, remanding the record as to this facility would allow EPA the opportunity to address the Center's objection, which it did not raise during the public comment period. In the event the Court remands the record to the Agency, EPA does not intend at this time to add additional documents to the administrative record for the First Rule.

11. Such remand should be limited to the thermal oxidizer at the Roystone Compressor Station because it is the only new pollution control device approved in the First Rule that emits a criteria pollutant. Such a remand is permissible, because EPA views each facility in the First Rule

as a separable SIP revision, and therefore severable. 86 Fed. Reg. at 48911.

12.     Based on the Air & Radiation Division's recent experience in publishing several Federal Register notices, the estimated time required for EPA's record clarification can reasonably take nine months from commencement to signature by the Regional Administrator. EPA believes that a full nine months from remand until signature of a new final rule will reasonably allow sufficient time for EPA to complete and explain its technical analysis, provide ample opportunity for public notice and comment on its analysis and proposed decision, and accommodate all required internal review.

13.     Remand without vacatur would provide the Commonwealth and the facility regulatory certainty while EPA provides a further explanation on the record regarding its approval of the thermal oxidizer.

14.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 5th day of August 2022.

ANDREA BAIN
Digitally signed by ANDREA
BAIN
Date: 2022.08.05 07:18:32
-04'00'

Andrea Bain
Deputy Division Director
Air & Radiation Division
EPA Region 3

# STATUTORY AND REGULATORY ADDENDUM

# STATUTORY AND REGULATORY ADDENDUM

## TABLE OF CONTENTS

**Statutes**

42 U.S.C. § 7602 ...................................................................ADD1

42 U.S.C. § 7604 ...................................................................ADD5

**State Statutes**

25 Pa. Code § 121.1 (excerpt) ..............................................ADD9

25 Pa. Code § 129.96 ..........................................................ADD11

25 Pa. Code § 129.98 ..........................................................ADD12

25 Pa. Code § 129.100 ........................................................ADD15

**Code of Federal Regulations**

40 C.F.R. § 51.1105 ............................................................ADD19

40 C.F.R. § 81.339 (excerpt) ..............................................ADD22

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 85. Air Pollution Prevention and Control (Refs & Annos)
      Subchapter III. General Provisions

42 U.S.C.A. § 7602

§ 7602. Definitions

Currentness

When used in this chapter--

**(a)** The term "Administrator" means the Administrator of the Environmental Protection Agency.

**(b)** The term "air pollution control agency" means any of the following:

**(1)** A single State agency designated by the Governor of that State as the official State air pollution control agency for purposes of this chapter.

**(2)** An agency established by two or more States and having substantial powers or duties pertaining to the prevention and control of air pollution.

**(3)** A city, county, or other local government health authority, or, in the case of any city, county, or other local government in which there is an agency other than the health authority charged with responsibility for enforcing ordinances or laws relating to the prevention and control of air pollution, such other agency.

**(4)** An agency of two or more municipalities located in the same State or in different States and having substantial powers or duties pertaining to the prevention and control of air pollution.

**(5)** An agency of an Indian tribe.

**(c)** The term "interstate air pollution control agency" means--

**(1)** an air pollution control agency established by two or more States, or

**(2)** an air pollution control agency of two or more municipalities located in different States.

**(d)** The term "State" means a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa and includes the Commonwealth of the Northern Mariana Islands.

**(e)** The term "person" includes an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof.

**(f)** The term "municipality" means a city, town, borough, county, parish, district, or other public body created by or pursuant to State law.

**(g)** The term "air pollutant" means any air pollution agent or combination of such agents, including any physical, chemical, biological, radioactive (including source material, special nuclear material, and byproduct material) substance or matter which is emitted into or otherwise enters the ambient air. Such term includes any precursors to the formation of any air pollutant, to the extent the Administrator has identified such precursor or precursors for the particular purpose for which the term "air pollutant" is used.

**(h)** All language referring to effects on welfare includes, but is not limited to, effects on soils, water, crops, vegetation, manmade materials, animals, wildlife, weather, visibility, and climate, damage to and deterioration of property, and hazards to transportation, as well as effects on economic values and on personal comfort and well-being, whether caused by transformation, conversion, or combination with other air pollutants.

**(i)** The term "Federal land manager" means, with respect to any lands in the United States, the Secretary of the department with authority over such lands.

**(j)** Except as otherwise expressly provided, the terms "major stationary source" and "major emitting facility" mean any stationary facility or source of air pollutants which directly emits, or has the potential to emit, one hundred tons per year or more of any air pollutant (including any major emitting facility or source of fugitive emissions of any such pollutant, as determined by rule by the Administrator).

**(k)** The terms "emission limitation" and "emission standard" mean a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter.. [1]

**(l)** The term "standard of performance" means a requirement of continuous emission reduction, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction.

**(m)** The term "means of emission limitation" means a system of continuous emission reduction (including the use of specific technology or fuels with specified pollution characteristics).

**(n)** The term "primary standard attainment date" means the date specified in the applicable implementation plan for the attainment of a national primary ambient air quality standard for any air pollutant.

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.    2

**(o)** The term "delayed compliance order" means an order issued by the State or by the Administrator to an existing stationary source, postponing the date required under an applicable implementation plan for compliance by such source with any requirement of such plan.

**(p)** The term "schedule and timetable of compliance" means a schedule of required measures including an enforceable sequence of actions or operations leading to compliance with an emission limitation, other limitation, prohibition, or standard.

**(q)** For purposes of this chapter, the term "applicable implementation plan" means the portion (or portions) of the implementation plan, or most recent revision thereof, which has been approved under section 7410 of this title, or promulgated under section 7410(c) of this title, or promulgated or approved pursuant to regulations promulgated under section 7601(d) of this title and which implements the relevant requirements of this chapter.

**(r) Indian tribe.**--The term "Indian tribe" means any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village, which is Federally recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

**(s) VOC.**--The term "VOC" means volatile organic compound, as defined by the Administrator.

**(t) PM-10.**--The term "PM-10" means particulate matter with an aerodynamic diameter less than or equal to a nominal ten micrometers, as measured by such method as the Administrator may determine.

**(u) NAAQS and CTG.**--The term "NAAQS" means national ambient air quality standard. The term "CTG" means a Control Technique Guideline published by the Administrator under section 7408 of this title.

**(v) NO$_x$.**--The term "NO$_x$" means oxides of nitrogen.

**(w) CO.**--The term "CO" means carbon monoxide.

**(x) Small source.**--The term "small source" means a source that emits less than 100 tons of regulated pollutants per year, or any class of persons that the Administrator determines, through regulation, generally lack technical ability or knowledge regarding control of air pollution.

**(y) Federal implementation plan.**--The term "Federal implementation plan" means a plan (or portion thereof) promulgated by the Administrator to fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a State implementation plan, and which includes enforceable emission limitations or other control measures, means or techniques (including economic incentives, such as marketable permits or auctions of emissions allowances), and provides for attainment of the relevant national ambient air quality standard.

**(z) Stationary source.**--The term "stationary source" means generally any source of an air pollutant except those emissions resulting directly from an internal combustion engine for transportation purposes or from a nonroad engine or nonroad vehicle as defined in section 7550 of this title.

### CREDIT(S)

(July 14, 1955, c. 360, Title III, § 302, formerly § 9, as added Pub.L. 88-206, § 1, Dec. 17, 1963, 77 Stat. 400, renumbered Pub.L. 89-272, Title I, § 101(4), Oct. 20, 1965, 79 Stat. 992; amended Pub.L. 90-148, § 2, Nov. 21, 1967, 81 Stat. 504; Pub.L. 91-604, § 15(a)(1), (c)(1), Dec. 31, 1970, 84 Stat. 1710, 1713; Pub.L. 95-95, Title II, § 218(c), Title III, § 301, Aug. 7, 1977, 91 Stat. 761, 769; Pub.L. 95-190, § 14(a)(76), Nov. 16, 1977, 91 Stat. 1404; Pub.L. 101-549, Title I, §§ 101(d)(4), 107(a), (b), 108(j), 109(b), Title III, § 302(e), Title VII, § 709, Nov. 15, 1990, 104 Stat. 2409, 2464, 2468, 2470, 2574, 2684.)

### Footnotes

1    So in original.

42 U.S.C.A. § 7602, 42 USCA § 7602
Current through P.L. 117-161. Some statute sections may be more current, see credits for details.

**End of Document**                © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

United States Code Annotated
　　Title 42. The Public Health and Welfare
　　　　Chapter 85. Air Pollution Prevention and Control (Refs & Annos)
　　　　　　Subchapter III. General Provisions

42 U.S.C.A. § 7604

§ 7604. Citizen suits

*Currentness*

**(a) Authority to bring civil action; jurisdiction**

Except as provided in subsection (b), any person may commence a civil action on his own behalf--

**(1)** against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

**(2)** against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator, or

**(3)** against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I (relating to significant deterioration of air quality) or part D of subchapter I (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties (except for actions under paragraph (2)). The district courts of the United States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed, except that an action to compel agency action referred to in section 7607(b) of this title which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 7607(b) of this title. In any such action for unreasonable delay, notice to the entities referred to in subsection (b)(1)(A) shall be provided 180 days before commencing such action.

**(b) Notice**

No action may be commenced--

**(1)** under subsection (a)(1)--

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.　　　1

**(A)** prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

**(B)** if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right. [1]

**(2)** under subsection (a)(2) prior to 60 days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 7412(i)(3)(A) or (f)(4) of this title or an order issued by the Administrator pursuant to section 7413(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

### (c) Venue; intervention by Administrator; service of complaint; consent judgment

**(1)** Any action respecting a violation by a stationary source of an emission standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located.

**(2)** In any action under this section, the Administrator, if not a party, may intervene as a matter of right at any time in the proceeding. A judgment in an action under this section to which the United States is not a party shall not, however, have any binding effect upon the United States.

**(3)** Whenever any action is brought under this section the plaintiff shall serve a copy of the complaint on the Attorney General of the United States and on the Administrator. No consent judgment shall be entered in an action brought under this section in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator during which time the Government may submit its comments on the proposed consent judgment to the court and parties or may intervene as a matter of right.

### (d) Award of costs; security

The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

### (e) Nonrestriction of other rights

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from--

**(1)** bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or

**(2)** bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality,

against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution. For provisions requiring compliance by the United States, departments, agencies, instrumentalities, officers, agents, and employees in the same manner as nongovernmental entities, see section 7418 of this title.

(f) "Emission standard or limitation under this chapter" defined

For purposes of this section, the term "emission standard or limitation under this chapter" means--

**(1)** a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,

**(2)** a control or prohibition respecting a motor vehicle fuel or fuel additive, or [2]

**(3)** any condition or requirement of a permit under part C of subchapter I (relating to significant deterioration of air quality) or part D of subchapter I (relating to nonattainment),, [3] section 7419 of this title (relating to primary nonferrous smelter orders), any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements, section 7545(e) and (f) of this title (relating to fuels and fuel additives), section 7491 of this title (relating to visibility protection), any condition or requirement under subchapter VI (relating to ozone protection), or any requirement under section 7411 or 7412 of this title (without regard to whether such requirement is expressed as an emission standard or otherwise); [4] or

**(4)** any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations. [5]

which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

**(g) Penalty fund**

**(1)** Penalties received under subsection (a) shall be deposited in a special fund in the United States Treasury for licensing and other services. Amounts in such fund are authorized to be appropriated and shall remain available until expended, for use by the Administrator to finance air compliance and enforcement activities. The Administrator shall annually report to the Congress about the sums deposited into the fund, the sources thereof, and the actual and proposed uses thereof.

**(2)** Notwithstanding paragraph (1) the court in any action under this subsection [6] to apply civil penalties shall have discretion to order that such civil penalties, in lieu of being deposited in the fund referred to in paragraph (1), be used in beneficial mitigation projects which are consistent with this chapter and enhance the public health or the environment. The court shall obtain the view of the Administrator in exercising such discretion and selecting any such projects. The amount of any such payment in any such action shall not exceed $100,000.

### CREDIT(S)

(July 14, 1955, c. 360, Title III, § 304, as added Pub.L. 91-604, § 12(a), Dec. 31, 1970, 84 Stat. 1706; amended Pub.L. 95-95, Title III, § 303(a) to (c), Aug. 7, 1977, 91 Stat. 771, 772; Pub.L. 95-190, § 14(a)(77), (78), Nov. 16, 1977, 91 Stat. 1404; Pub.L. 101-549, Title III, § 302(f), Title VII, § 707(a) to (g), Nov. 15, 1990, 104 Stat. 2574, 2682, 2683.)

### Footnotes

1    So in original. The period probably should be ", or".

2    So in original. The word "or" probably should not appear.

3    So in original.

4    So in original. The semicolon probably should be comma.

5    So in original. The period probably should be a comma.

6    So in original. Probably should be "this section".

42 U.S.C.A. § 7604, 42 USCA § 7604
Current through P.L. 117-161. Some statute sections may be more current, see credits for details.

**End of Document**    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Pennsylvania Administrative Code
  Title 25. Environmental Protection
    Part I. Department of Environmental Protection
      Subpart C. Protection of Natural Resources
        Article III. Air Resources
          Chapter 121. General Provisions

25 Pa. Code § 121.1

§ 121.1. Definitions.

Currentness

The definitions in section 3 of the act (35 P.S. § 4003) apply to this article. In addition, the following words and terms, when used in this article, have the following meanings, unless the context clearly indicates otherwise:

*ABS welding adhesive* or *acrylonitrile-butadiene-styrene welding adhesive*--An adhesive intended by the manufacturer to weld acrylonitrile-butadiene-styrene (ABS) pipe, which is made by reacting monomers of acrylonitrile, butadiene and styrene.

*Ablative coating*--A coating that chars when exposed to open flame or extreme temperatures, as would occur during the failure of an engine casing or during aerodynamic heating. The ablative char surface serves as an insulating barrier, protecting adjacent components from the heat or open flame.

*Account*--The place in the $NO_x$ allowance tracking system where allowances are recorded including allowances held by a $NO_x$ affected source.

*Account number*--The identification number given by the $NO_x$ budget administrator to an account in which $NO_x$ allowances are held in the $NO_x$ allowance tracking system.

*Acquiring account*--The party in a $NO_x$ allowance transfer who obtains $NO_x$ allowances through purchase, trade, auction, gift or another lawful means.

*Act*--The Air Pollution Control Act (35 P. S. §§ 4001--4015).

*Actual emissions*--For purposes of Chapter 127, Subchapter E (relating to new source review), the actual rate of emissions of a regulated NSR pollutant from an emissions unit shall be determined in accordance with the following subparagraphs. This definition does not apply for calculating whether a significant emissions increase has occurred, or for establishing a PAL under § 127.218 (relating to PALs). Instead, the definition of the terms "projected actual emissions" and "baseline actual emissions" apply for those purposes. This definition may not be used to calculate a baseline emissions rate under § 127.207(4) (relating to creditable emissions decrease or ERC generation and creation).

(i) Actual emissions as of a particular date must equal the average rate, in TPY, at which the unit actually emitted the regulated NSR pollutant during the consecutive 24-month period which immediately preceded the particular date and which is representative of normal source operations. The Department will authorize the use of a different time period upon a determination that it is more representative of normal source operation. Actual emissions shall be calculated using the unit's actual operating hours, production rates and types of materials processed, stored or combusted during the selected time period.

(F) An increase in the hours of operation or in the production rate, unless the change is prohibited under a condition of a Federally enforceable plan approval or an operating permit.

(G) A change in ownership of a facility.

(v) The term does not apply to a particular regulated NSR pollutant when the major facility is complying with the requirements under § 127.218. Instead, the definition of "PAL major modification" applies.

*Major NO$_x$ emitting facility*--A facility which emits or has the potential to emit NO$_x$ from the processes located at the site or on contiguous properties under the common control of the same person at a rate greater than one of the following:

(i) Ten TPY in an ozone nonattainment area designated as extreme under section 182(e) and (f) of the Clean Air Act (42 U.S.C.A. § 7511a(e) and (f)).

(ii) Twenty-five TPY in an ozone nonattainment area designated as severe under section 182(d) and (f) of the Clean Air Act.

(iii) Fifty TPY in an area designated as serious under section 182(c) and (f) of the Clean Air Act.

(iv) One hundred TPY in an area included in an ozone transport region established under section 184 of the Clean Air Act (42 U.S.C.A. § 7511c).

(v) Twenty-five TPY and is located in Bucks, Chester, Delaware, Montgomery or Philadelphia County. This threshold does not apply to §§ 129.96--129.100 (relating to additional RACT requirements for major sources of NO$_x$ and VOCs).

*Major VOC emitting facility*--A facility which emits or has the potential to emit VOCs from processes located at the site or on contiguous properties under the common control of the same person at a rate greater than one of the following:

(i) Ten TPY in an ozone nonattainment area designated as extreme under section 182(e) of the Clean Air Act.

(ii) Twenty-five TPY in an ozone nonattainment area designated as severe under section 182(d) of the Clean Air Act.

(iii) Fifty TPY in an area included in an ozone transport region established under section 184 of the Clean Air Act.

(iv) Twenty-five TPY and is located in Bucks, Chester, Delaware, Montgomery or Philadelphia County. This threshold does not apply to §§ 129.96--129.100.

*Malodor*--An odor which causes annoyance or discomfort to the public and which the Department determines to be objectionable to the public.

*Marine deck sealant* or *marine deck sealant primer*--A sealant or sealant primer labeled for application to wooden marine decks.

West's Pennsylvania Administrative Code
  Title 25. Environmental Protection
    Part I. Department of Environmental Protection
      Subpart C. Protection of Natural Resources
        Article III. Air Resources
          Chapter 129. Standards for Sources
            Additional Ract Requirements for Major Sources of NOx and Vocs

25 Pa. Code § 129.96

§ 129.96. Applicability.

Currentness

(a) The $NO_x$ requirements of this section and §§ 129.97--129.100 apply Statewide to the owner and operator of a major $NO_x$ emitting facility and the VOC requirements of this section and §§ 129.97--129.100 apply Statewide to the owner and operator of a major VOC emitting facility that were in existence on or before July 20, 2012, for which a requirement or emission limitation, or both, has not been established in §§ 129.51--129.52c, 129.54--129.63, 129.64--129.69, 129.71--129.75, 129.77, 129.101--129.107 and 129.301--129.310.

(b) The $NO_x$ requirements of this section and §§ 129.97--129.100 apply Statewide to the owner and operator of a $NO_x$ emitting facility and the VOC requirements of this section and §§ 129.97--129.100 apply Statewide to the owner and operator of a VOC emitting facility when the installation of a new source or a modification or change in operation of an existing source after July 20, 2012, results in the source or facility meeting the definition of a major $NO_x$ emitting facility or a major VOC emitting facility and for which a requirement or an emission limitation, or both, has not been established in §§ 129.51--129.52e, 129.54--129.69, 129.71--129.75, 129.77, 129.101--129.107 and 129.301--129.310.

(c) This section and §§ 129.97--129.100 do not apply to the owner and operator of a $NO_x$ air contamination source located at a major $NO_x$ emitting facility that has the potential to emit less than 1 TPY of $NO_x$ or a VOC air contamination source located at a major VOC emitting facility that has the potential to emit less than 1 TPY of VOC.

(d) This section and §§ 129.97--129.100 do not apply to the owner and operator of a facility which is not a major $NO_x$ emitting facility or a major VOC emitting facility on or before January 1, 2017.

**Credits**
Adopted April 23, 2016. Amended Aug. 11, 2018.

Current through Pennsylvania Bulletin, Vol. 52, Num. 28, dated July 9, 2022. Some sections may be more current, see credits for details.

25 Pa. Code § 129.96, 25 PA ADC § 129.96

---

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Pennsylvania Administrative Code
  Title 25. Environmental Protection
    Part I. Department of Environmental Protection
      Subpart C. Protection of Natural Resources
        Article III. Air Resources
          Chapter 129. Standards for Sources
            Additional Ract Requirements for Major Sources of NOx and Vocs

25 Pa. Code § 129.98

§ 129.98. Facility-wide or system-wide $NO_x$ emissions averaging plan general requirements.

Currentness

(a) The owner or operator of a major $NO_x$ emitting facility subject to § 129.96 (relating to applicability) that includes at least one air contamination source subject to a $NO_x$ RACT emission limitation in § 129.97 (relating to presumptive RACT requirements, RACT emission limitations and petition for alternative compliance schedule) that cannot meet the applicable $NO_x$ RACT emission limitation may elect to meet the applicable $NO_x$ RACT emission limitation in § 129.97 by averaging $NO_x$ emissions on either a facility-wide or system-wide basis using a 30-day rolling average. System-wide emissions averaging must be among sources under common control of the same owner or operator within the same ozone nonattainment area in this Commonwealth.

(b) The owner or operator of each facility that elects to comply with subsection (a) shall submit a written $NO_x$ emissions averaging plan to the Department or appropriate approved local air pollution control agency as part of an application for an operating permit modification or a plan approval, if otherwise required. The application incorporating the requirements of this section shall be submitted by the applicable date as follows:

 (1) October 24, 2016, for a source subject to § 129.96(a).

 (2) October 24, 2016, or 6 months after the date that the source meets the definition of a major $NO_x$ emitting facility, whichever is later, for a source subject to § 129.96(b).

(c) Each $NO_x$ air contamination source included in the application for an operating permit modification or a plan approval, if otherwise required, for averaging $NO_x$ emissions on either a facility-wide or system-wide basis using a 30-day rolling average submitted under subsection (b) must be an air contamination source subject to a $NO_x$ RACT emission limitation in § 129.97.

(d) The application for the operating permit modification or the plan approval, if otherwise required, for averaging $NO_x$ emissions on either a facility-wide or system-wide basis using a 30-day rolling average submitted under subsection (b) must demonstrate that the aggregate $NO_x$ emissions emitted by the air contamination sources included in the facility-wide or system-wide $NO_x$ emissions averaging plan using a 30-day rolling average are not greater than the $NO_x$ emissions that would be emitted by the group of included sources if each source complied with the applicable $NO_x$ RACT emission limitation in § 129.97 on a source-specific basis.

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.    1

(e) The owner or operator shall calculate the alternative facility-wide or system-wide $NO_x$ RACT emissions limitation using a 30-day rolling average for the air contamination sources included in the application for the operating permit modification or plan approval, if otherwise required, submitted under subsection (b) by using the following equation to sum the emissions for all of the sources included in the $NO_x$ emissions averaging plan:

$$\left[ \sum{}_{i=1}^{n} \text{Ei}_{\text{actual}} \right] \leq \left[ \sum{}_{i=1}^{n} \text{Ei}_{\text{allowable}} \right]$$

Where:

$\text{Ei}_{\text{actual}}$ = The actual $NO_x$ mass emissions, including emissions during start-ups, shutdowns and malfunctions, for air contamination source i on a 30-day rolling basis.

$\text{Ei}_{\text{allowable}}$ = The allowable $NO_x$ mass emissions computed using the allowable emission rate limitations for air contamination source i on a 30-day rolling basis specified in § 129.97. If an air contamination source included in an averaging plan is subject to a numerical emission rate limit that is more stringent than the applicable allowable emission rate limitation in § 129.97, then the numerical emission rate limit shall be used for the calculation of the allowable $NO_x$ mass emissions.

n = The number of air contamination sources included in the $NO_x$ emissions averaging plan.

(f) The application for the operating permit modification or a plan approval, if otherwise required, specified in subsections (b)--(e) may include facility-wide or system-wide $NO_x$ emissions averaging using a 30-day rolling average only for $NO_x$ emitting sources or $NO_x$ emitting facilities that are owned or operated by the applicant.

(g) The application for the operating permit modification or a plan approval, if otherwise required, specified in subsections (b)--(f) must include the following information:

(1) Identification of each air contamination source included in the $NO_x$ emissions averaging plan.

(2) Each air contamination source's applicable emission limitation in § 129.97.

(3) Methods for demonstrating compliance and recordkeeping and reporting requirements in accordance with § 129.100 (relating to compliance demonstration and recordkeeping requirements) for each source included in the $NO_x$ emissions averaging plan submitted under subsection (b).

(h) An air contamination source or facility included in the facility-wide or system-wide $NO_x$ emissions averaging plan submitted in accordance with subsections (b)--(g) may be included in only one facility-wide or system-wide $NO_x$ emissions averaging plan.

(i) The Department or appropriate approved local air pollution control agency will issue a modification to the operating permit or a plan approval authorizing the $NO_x$ emissions averaging plan.

(j) The owner or operator of an air contamination source or facility included in the facility-wide or system-wide $NO_x$ emissions averaging plan submitted in accordance with subsections (b)--(h) shall submit the reports and records specified in subsection (g)(3) to the Department or appropriate approved local air pollution control agency on the schedule specified in subsection (g)(3) to demonstrate compliance with § 129.100.

(k) The owner or operator of an air contamination source or facility included in a facility-wide or system-wide $NO_x$ emissions averaging plan submitted in accordance with subsections (b)--(h) that achieves emission reductions in accordance with other emission limitations required under the act or the Clean Air Act, or regulations adopted under the act or the Clean Air Act, that are not $NO_x$ RACT emission limitations may not substitute those emission reductions for the emission reductions required by the facility-wide or system-wide $NO_x$ emissions averaging plan submitted to the Department or appropriate approved local air pollution control agency under subsection (b).

(l) The owner or operator of an air contamination source subject to a $NO_x$ RACT emission limitation in § 129.97 that is not included in a facility-wide or system-wide $NO_x$ emissions averaging plan submitted under subsection (b) shall operate the source in compliance with the applicable $NO_x$ RACT emission limitation in § 129.97.

(m) The owner and operator of the air contamination sources included in a facility-wide or system-wide $NO_x$ emissions averaging plan submitted under subsection (b) shall be liable for a violation of an applicable $NO_x$ RACT emission limitation at each source included in the $NO_x$ emissions averaging plan.

**Credits**

Adopted April 23, 2016.

Current through Pennsylvania Bulletin, Vol. 52, Num. 28, dated July 9, 2022. Some sections may be more current, see credits for details.

25 Pa. Code § 129.98, 25 PA ADC § 129.98

---

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Pennsylvania Administrative Code
Title 25. Environmental Protection
Part I. Department of Environmental Protection
Subpart C. Protection of Natural Resources
Article III. Air Resources
Chapter 129. Standards for Sources
Additional Ract Requirements for Major Sources of NOx and Vocs

25 Pa. Code § 129.100

§ 129.100. Compliance demonstration and record-keeping requirements.

Currentness

(a) Except as provided in subsection (c), the owner and operator of an air contamination source subject to a $NO_x$ RACT requirement or RACT emission limitation or VOC RACT requirement or RACT emission limitation, or both, listed in § 129.97 (relating to presumptive RACT requirements, RACT emission limitations and petition for alternative compliance schedule) shall demonstrate compliance with the applicable RACT requirement or RACT emission limitation by performing the following monitoring or testing procedures:

(1) For an air contamination source with a CEMS, monitoring and testing in accordance with the requirements of Chapter 139, Subchapter C (relating to requirements for source monitoring for stationary sources) using a 30-day rolling average, except municipal waste combustors.

(i) A 30-day rolling average emission rate for an air contamination source that is a combustion unit shall be expressed in pounds per million Btu and calculated in accordance with the following procedure:

(A) Sum the total pounds of pollutant emitted from the combustion unit for the current operating day and the previous 29 operating days.

(B) Sum the total heat input to the combustion unit in million Btu for the current operating day and the previous 29 operating days.

(C) Divide the total number of pounds of pollutant emitted by the combustion unit for the 30 operating days by the total heat input to the combustion unit for the 30 operating days.

(ii) A 30-day rolling average emission rate for each applicable RACT emission limitation shall be calculated for an affected air contamination source for each consecutive operating day.

(iii) Each 30-day rolling average emission rate for an affected air contamination source must include the emissions that occur during the entire operating day, including emissions from start-ups, shutdowns and malfunctions.

(2) For a Portland cement kiln with a CEMS, monitoring of clinker production rates in accordance with 40 CFR 63.1350(d) (relating to monitoring requirements).

(3) For a municipal waste combustor with a CEMS, monitoring and testing in accordance with the requirements in Chapter 139, Subchapter C, using a daily average.

(4) For an air contamination source without a CEMS, monitoring and testing in accordance with a Department-approved emissions source test that meets the requirements of Chapter 139, Subchapter A (relating to sampling and testing methods and procedures). The source test shall be conducted one time in each 5-year calendar period.

(b) Except as provided in § 129.97(k) and § 129.99(i) (relating to alternative RACT proposal and petition for alternative compliance schedule), the owner and operator of an air contamination source subject to subsection (a) shall demonstrate compliance with the applicable RACT requirement or RACT emission limitation in accordance with the procedures in subsection (a) not later than:

(1) January 1, 2017, for a source subject to § 129.96(a) (relating to applicability).

(2) January 1, 2017, or 1 year after the date that the source meets the definition of a major $NO_x$ emitting facility or major VOC emitting facility, whichever is later, for a source subject to § 129.96(b).

(c) An owner or operator of an air contamination source subject to this section, §§ 129.96 and 129.97 and § 129.98 (relating to facility-wide or system-wide $NO_x$ emissions averaging plan general requirements) may request a waiver from the requirement to demonstrate compliance with the applicable emission limitation listed in § 129.97 if the following requirements are met:

(1) The request for a waiver is submitted, in writing, to the Department not later than:

(i) October 24, 2016, for a source subject to § 129.96(a).

(ii) October 24, 2016, or 6 months after the date that the source meets the definition of a major $NO_x$ emitting facility or major VOC emitting facility, whichever is later, for a source subject to § 129.96(b).

(2) The request for a waiver demonstrates that a Department-approved emissions source test was performed in accordance with the requirements of Chapter 139, Subchapter A, on or after:

(i) April 23, 2015, for a source subject to § 129.96(a).

(ii) April 23, 2015, or within 12 months prior to the date that the source meets the definition of a major $NO_x$ emitting facility or major VOC emitting facility, whichever is later, for a source subject to § 129.96(b).

(3) The request for a waiver demonstrates to the satisfaction of the Department that the test results show that the source's rate of emissions is in compliance with the source's applicable $NO_x$ emission limitation or VOC emission limitation.

(4) The Department approves, in writing, the request for a waiver.

(d) The owner and operator of an air contamination source subject to this section and §§ 129.96--129.99 shall keep records to demonstrate compliance with §§ 129.96--129.99 in the following manner:

(1) The records must include sufficient data and calculations to demonstrate that the requirements of §§ 129.96--129.99 are met.

(2) Data or information required to determine compliance shall be recorded and maintained in a time frame consistent with the averaging period of the requirement.

(e) Beginning with the compliance date specified in § 129.97(a), the owner or operator of an air contamination source claiming that the air contamination source is exempt from the applicable $NO_x$ emission rate threshold specified in § 129.99(b) and the requirements of § 129.97 based on the air contamination source's potential to emit shall maintain records that demonstrate to the Department or appropriate approved local air pollution control agency that the air contamination source is not subject to the specified emission rate threshold.

(f) Beginning with the compliance date specified in § 129.97(a), the owner or operator of an air contamination source claiming that the air contamination source is exempt from the applicable VOC emission rate threshold specified in § 129.99(c) and the requirements of § 129.97 based on the air contamination source's potential to emit shall maintain records that demonstrate to the Department or appropriate approved local air pollution control agency that the air contamination source is not subject to the specified emission rate threshold.

(g) The owner or operator of a combustion unit subject to § 129.97(b) shall record each adjustment conducted under the procedures in § 129.97(b). This record must contain, at a minimum:

(1) The date of the tuning procedure.

(2) The name of the service company and the technician performing the procedure.

(3) The final operating rate or load.

(4) The final $NO_x$ and CO emission rates.

(5) The final excess oxygen rate.

(6) Other information required by the applicable operating permit.

(h) The owner or operator of a Portland cement kiln subject to § 129.97(h) shall maintain a daily operating log for each Portland cement kiln. The record for each kiln must include:

(1) The total hours of operation.

(2) The type and quantity of fuel used.

(3) The quantity of clinker produced.

(4) The date, time and duration of a start-up, shutdown or malfunction of a Portland cement kiln or emissions monitoring system.

(i) The records shall be retained by the owner or operator for 5 years and made available to the Department or appropriate approved local air pollution control agency upon receipt of a written request from the Department or appropriate approved local air pollution control agency.

**Credits**

Adopted April 23, 2016. Amended Aug. 11, 2018.

Current through Pennsylvania Bulletin, Vol. 52, Num. 28, dated July 9, 2022. Some sections may be more current, see credits for details.

25 Pa. Code § 129.100, 25 PA ADC § 129.100

---

End of Document                                        © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

Code of Federal Regulations
  Title 40. Protection of Environment
    Chapter I. Environmental Protection Agency (Refs & Annos)
      Subchapter C. Air Programs
        Part 51. Requirements for Preparation, Adoption, and Submittal of Implementation Plans (Refs & Annos)
          Subpart AA. Provisions for Implementation of the 2008 Ozone National Ambient Air Quality Standards (Refs & Annos)

---

40 C.F.R. § 51.1105

§ 51.1105 Transition from the 1997 ozone NAAQS to the 2008 ozone NAAQS and anti-backsliding.

Effective: April 6, 2015

Currentness

(a) Requirements that continue to apply after revocation of the 1997 ozone NAAQS—

(1) 2008 ozone NAAQS nonattainment and 1997 ozone NAAQS nonattainment. The following requirements apply to an area designated nonattainment for the 2008 ozone NAAQS and also designated nonattainment for the 1997 ozone NAAQS, or nonattainment for both the 1997 and 1–hour ozone NAAQS, at the time of revocation of the respective ozone NAAQS: The area remains subject to the obligation to adopt and implement the applicable requirements of § 51.1100(o), for any ozone NAAQS for which it was designated nonattainment at the time of revocation, in accordance with its classification for that NAAQS at the time of that revocation, except as provided in paragraph (b) of this section.

(2) 2008 ozone NAAQS nonattainment and 1997 ozone NAAQS maintenance. For an area designated nonattainment for the 2008 ozone NAAQS that was redesignated to attainment for the 1997 ozone NAAQS prior to April 6, 2015 (hereinafter a "maintenance area") the SIP, including the maintenance plan, is considered to satisfy the applicable requirements of 40 CFR 51.1100(o) for the revoked NAAQS. The measures in the SIP and maintenance plan shall continue to be implemented in accordance with the terms in the SIP. Any measures associated with applicable requirements that were shifted to contingency measures prior to April 6, 2015 may remain in that form. After April 6, 2015, and to the extent consistent with any SIP for the 2008 ozone NAAQS and with CAA sections 110(l) and 193, the state may request that obligations under the applicable requirements of § 51.1100(o) be shifted to the SIP's list of maintenance plan contingency measures for the area.

(3) 2008 ozone NAAQS attainment and 1997 ozone NAAQS nonattainment. For an area designated attainment for the 2008 ozone NAAQS, and designated nonattainment for the 1997 ozone NAAQS as of April 6, 2015 or for both the 1997 and the 1–hour ozone NAAQS as of the respective dates of their revocations, the area is no longer subject to nonattainment NSR and the state may at any time request that the nonattainment NSR provisions applicable to the area be removed from the SIP. The state may request, consistent with CAA sections 110(l) and 193, that SIP measures adopted to satisfy other applicable requirements of § 51.1100(o) be shifted to the SIP's list of maintenance plan contingency measures for the area. The area's approved PSD SIP shall be considered to satisfy the state's obligations with respect to the area's maintenance of the 2008 ozone NAAQS pursuant to CAA section 110(a)(1).

(4) 2008 ozone NAAQS attainment and 1997 ozone NAAQS maintenance. An area designated attainment for the 2008 ozone NAAQS with an approved CAA section 175A maintenance plan for the 1997 ozone NAAQS is considered to satisfy

---

the applicable requirements of 40 CFR 51.1100(o) through implementation of the SIP and maintenance plan provisions for the area. After April 6, 2015, and to the extent consistent with CAA sections 110(l) and 193, the state may request that obligations under the applicable requirements of 40 CFR 51.1100(o) be shifted to the list of maintenance plan contingency measures for the area. For an area that is initially designated attainment for the 2008 ozone NAAQS and which has been redesignated to attainment for the 1997 ozone NAAQS with an approved CAA section 175A maintenance plan and an approved PSD SIP, the area's approved maintenance plan and the state's approved PSD SIP for the area are considered to satisfy the state's obligations with respect to the area's maintenance of the 2008 ozone NAAQS pursuant to CAA section 110(a)(1).

(b) Effect of Redesignation or Redesignation Substitute.

(1) An area remains subject to the anti-backsliding obligations for a revoked NAAQS under paragraphs (a)(1) and (2) of this section until either EPA approves a redesignation to attainment for the area for the 2008 ozone NAAQS; or EPA approves a demonstration for the area in a redesignation substitute procedure for a revoked NAAQS. Under this redesignation substitute procedure for a revoked NAAQS, and for this limited anti-backsliding purpose, the demonstration must show that the area has attained that revoked NAAQS due to permanent and enforceable emission reductions and that the area will maintain that revoked NAAQS for 10 years from the date of EPA's approval of this showing.

(2) If EPA, after notice-and-comment rulemaking, approves a redesignation to attainment, the state may request that provisions for nonattainment NSR be removed from the SIP, and that other anti-backsliding obligations be shifted to contingency measures provided that such action is consistent with CAA sections 110(l) and 193. If EPA, after notice and comment rulemaking, approves a redesignation substitute for a revoked NAAQS, the state may request that provisions for nonattainment NSR for that revoked NAAQS be removed, and that other anti-backsliding obligations for that revoked NAAQS be shifted to contingency measures provided that such action is consistent with CAA sections 110(l) and 193.

(c) Portions of an area designated nonattainment or attainment for the 2008 ozone NAAQS that remain subject to the obligations identified in paragraph (a) of this section. Only that portion of the designated nonattainment or attainment area for the 2008 ozone NAAQS that was required to adopt the applicable requirements in § 51.1100(o) for purposes of the 1–hour or 1997 ozone NAAQS is subject to the obligations identified in paragraph (a) of this section. Subpart C of 40 CFR part 81 identifies the areas designated nonattainment and associated area boundaries for the 1997 ozone NAAQS at the time of revocation. Areas that are designated nonattainment for the 1997 ozone NAAQS at the time of designation for the 2008 ozone NAAQS may be redesignated to attainment prior to the effective date of revocation of that ozone NAAQS.

(d) Obligations under the 1997 ozone NAAQS that no longer apply after revocation of the 1997 ozone NAAQS—

(1) Second 10–year Maintenance plans. As of April 6, 2015, an area with an approved 1997 ozone NAAQS maintenance plan under CAA section 175A is not required to submit a second 10–year maintenance plan for the 1997 ozone NAAQS 8 years after approval of the initial 1997 ozone NAAQS maintenance plan.

(2) Determinations of failure to attain the 1997 and/or 1–hour NAAQS.

(i) As of April 6, 2015, the EPA is no longer obligated to determine pursuant to CAA section 181(b)(2) or section 179(c) whether an area attained the 1997 ozone NAAQS by that area's attainment date for the 1997 ozone NAAQS.

(ii) As of April 6, 2015, the EPA is no longer obligated to reclassify an area to a higher classification for the 1997 ozone NAAQS based upon a determination that the area failed to attain the 1997 ozone NAAQS by the area's attainment date for the 1997 ozone NAAQS.

(iii) For the revoked 1–hour and 1997 ozone NAAQS, the EPA is required to determine whether an area attained the 1–hour or 1997 ozone NAAQS by the area's attainment date solely for anti-backsliding purposes to address an applicable requirement for nonattainment contingency measures and CAA section 185 fee programs. In making such a determination, the EPA may consider and apply the provisions of CAA section 181(a)(5) and former 40 CFR 51.907 in interpreting whether a 1–year extension of the attainment date is applicable under CAA section 172(a)(2)(C).

(e) Continued applicability of the FIP and SIP requirements pertaining to interstate transport under CAA section 110(a)(2)(D)(i) and (ii) after revocation of the 1997 ozone NAAQS. All control requirements associated with a FIP or approved SIP in effect for an area as of April 6, 2015, such as the $NO_X$ SIP Call, the CAIR, or the CSAPR shall continue to apply after revocation of the 1997 ozone NAAQS. Control requirements approved into the SIP pursuant to obligations arising from CAA section 110(a)(2)(D)(i) and (ii), including 40 CFR 51.121, 51.122, 51.123 and 51.124, may be modified by the state only if the requirements of §§ 51.121, 51.122, 51.123 and 51.124, including statewide $NO_X$ emission budgets continue to be in effect. Any such modification must meet the requirements of CAA section 110(l).

(f) New source review. An area designated nonattainment for the 2008 ozone NAAQS and designated nonattainment for the 1997 ozone NAAQS on April 6, 2015 remains subject to the obligation to adopt and implement the major source threshold and offset requirements for nonattainment NSR that apply or applied to the area pursuant to CAA sections 172(c)(5), 173 and 182 based on the highest of: (i) The area's classification under CAA section 181(a)(1) for the 1–hour NAAQS as of the effective date of revocation of the 1–hour ozone NAAQS; (ii) the area's classification under 40 CFR 51.903 for the 1997 ozone NAAQS as of the date a permit is issued or as of April 6, 2015, whichever is earlier; and (iii) the area's classification under § 51.1103 for the 2008 ozone NAAQS. Upon removal of nonattainment NSR obligations for a revoked NAAQS under § 51.1105(b), the state remains subject to the obligation to adopt and implement the major source threshold and offset requirements for nonattainment NSR that apply or applied to the area for the remaining applicable NAAQS consistent with this paragraph.

**Credits**

[80 FR 12314, March 6, 2015]

SOURCE: 36 FR 22398, Nov. 25, 1971; 52 FR 24712, July 1, 1987; 55 FR 14249, April 17, 1990; 56 FR 42219, Aug. 26, 1991; 57 FR 32334, July 21, 1992; 57 FR 52987, Nov. 5, 1992; 58 FR 38821, July 20, 1993; 60 FR 40100, Aug. 7, 1995; 62 FR 8328, Feb. 24, 1997; 62 FR 43801, Aug. 15, 1997; 62 FR 44903, Aug. 25, 1997; 63 FR 24433, May 4, 1998; 64 FR 35763, July 1, 1999; 65 FR 45532, July 24, 2000; 72 FR 28613, May 22, 2007; 77 FR 30170, May 21, 2012, unless otherwise noted.

AUTHORITY: 23 U.S.C. 101; 42 U.S.C. 7401–7671q.

Current through Aug. 1, 2022, 87 FR 47092, except for 40 CFR § 52.220, which is current through July 28, 2022. Some sections may be more current. See credits for details.

Code of Federal Regulations
    Title 40. Protection of Environment
        Chapter I. Environmental Protection Agency (Refs & Annos)
            Subchapter C. Air Programs
                Part 81. Designation of Areas for Air Quality Planning Purposes (Refs & Annos)
                    Subpart C. Section 107 Attainment Status Designations (Refs & Annos)

40 C.F.R. § 81.339

§ 81.339 Pennsylvania.

Effective: April 30, 2021
Currentness

**Pennsylvania—TSP**

| Designated area | | Does not meet primary standards | Does not meet secondary standards | Cannot be classified | Better than national standards |
|---|---|---|---|---|---|
| I.......... | Metropolitan Philadelphia Interstate AQCR: | | | | |
| (A) | City of Philadelphia: | | | | |
| | Census tracts 1-12, 125-142, 144-157, 162-177, 190-205, 293, 294, 298-302, 315-321, 323, 325, 326, 329-332 | ......................................... X | | ......................................... | |
| | Census tracts 13-75, 143, 158-161, 178-189, 295-297, 322, 324, 327 | ........................................................................... | | X | |
| | Balance of city | ........................................................................................................ | | | X |
| (B) | Montgomery County: | | | | |
| | Conshohocken Boro | ........................................................................................................ | | | X |
| | Pottstown Boro | ......................................... X | | ......................................... | |
| | West Pottsgrove Township | ................................................................................ | | X | |
| | Upper Pottsgrove Township | ................................................................................ | | X | |
| (C) | Chester County: | | | | |

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.    1

| | | |
|---|---|---|
| Fayette County............................................ | ......................................... | UnclassifiableAttainment. |
| Greene County (remainder)...................... | ......................................... | UnclassifiableAttainment. |
| Indiana County (remainder)..................... | ......................................... | UnclassifiableAttainment. |

### Pennsylvania—NO$_2$ (1971 Annual Standard)

| Designated area | Does not meet primary standards | Cannot be classified or better than national standards |
|---|---|---|
| Entire State.................................. .................................................................... | | X |

### Pennsylvania—NO$_2$(2010 1-Hour Standard)

| Designated area | Designation [a] | |
|---|---|---|
| | Date [1] | Type |
| Adams County.................................................................. | | Unclassifiable/Attainment. |
| Allegheny County............................................ ...................... | | Unclassifiable/Attainment. |
| Armstrong County.............................................................. | | Unclassifiable/Attainment. |
| Beaver County................................................................... | | Unclassifiable/Attainment. |
| Bedford County................................................................. | | Unclassifiable/Attainment. |
| Berks County.................................................................... | | Unclassifiable/Attainment. |
| Blair County..................................................................... | | Unclassifiable/Attainment. |
| Bradford County................................................................ | | Unclassifiable/Attainment. |
| Bucks County.................................................................... | | Unclassifiable/Attainment. |
| Butler County.................................................................... | | Unclassifiable/Attainment. |
| Cambria County............................................. ...................... | | Unclassifiable/Attainment. |
| Cameron County................................................................ | | Unclassifiable/Attainment. |
| Carbon County.................................................................. | | Unclassifiable/Attainment. |
| Centre County............................................... ...................... | | Unclassifiable/Attainment. |
| Chester County.................................................................. | | Unclassifiable/Attainment. |
| Clarion County.................................................................. | | Unclassifiable/Attainment. |
| Clearfield County.............................................................. | | Unclassifiable/Attainment. |
| Clinton County.................................................. ................... | | Unclassifiable/Attainment. |

| | |
|---|---|
| Columbia County.......................................................... ....................... | Unclassifiable/Attainment. |
| Crawford County........................................................... ....................... | Unclassifiable/Attainment. |
| Cumberland County....................................................... ....................... | Unclassifiable/Attainment. |
| Dauphin County............................................................ ....................... | Unclassifiable/Attainment. |
| Delaware County........................................................... ....................... | Unclassifiable/Attainment. |
| Elk County.................................................................... ....................... | Unclassifiable/Attainment. |
| Erie County................................................................... ....................... | Unclassifiable/Attainment. |
| Fayette County.............................................................. ....................... | Unclassifiable/Attainment. |
| Forest County................................................................ ....................... | Unclassifiable/Attainment. |
| Franklin County............................................................ ....................... | Unclassifiable/Attainment. |
| Fulton County............................................................... ....................... | Unclassifiable/Attainment. |
| Greene County.............................................................. ....................... | Unclassifiable/Attainment. |
| Huntingdon County........................................................ ....................... | Unclassifiable/Attainment. |
| Indiana County.............................................................. ....................... | Unclassifiable/Attainment. |
| Jefferson County........................................................... ....................... | Unclassifiable/Attainment. |
| Juniata County.............................................................. ....................... | Unclassifiable/Attainment. |
| Lackawanna County....................................................... ....................... | Unclassifiable/Attainment. |
| Lancaster County........................................................... ....................... | Unclassifiable/Attainment. |
| Lawrence County........................................................... ....................... | Unclassifiable/Attainment. |
| Lebanon County............................................................ ....................... | Unclassifiable/Attainment. |
| Lehigh County.............................................................. ....................... | Unclassifiable/Attainment. |
| Luzerne County............................................................ ....................... | Unclassifiable/Attainment. |
| Lycoming County.......................................................... ....................... | Unclassifiable/Attainment. |
| McKean County............................................................ ....................... | Unclassifiable/Attainment. |
| Mercer County.............................................................. ....................... | Unclassifiable/Attainment. |
| Mifflin County.............................................................. ....................... | Unclassifiable/Attainment. |
| Monroe County............................................................. ....................... | Unclassifiable/Attainment. |
| Montgomery County...................................................... ....................... | Unclassifiable/Attainment. |
| Montour County............................................................ ....................... | Unclassifiable/Attainment. |

ADD24

| | |
|---|---|
| Northampton County.......................................................... | Unclassifiable/Attainment. |
| Northumberland County..................................................... | Unclassifiable/Attainment. |
| Perry County.......................................................... | Unclassifiable/Attainment. |
| Philadelphia County.......................................................... | Unclassifiable/Attainment. |
| Pike County.......................................................... | Unclassifiable/Attainment. |
| Potter County.......................................................... | Unclassifiable/Attainment. |
| Schuylkill County.......................................................... | Unclassifiable/Attainment. |
| Snyder County.......................................................... | Unclassifiable/Attainment. |
| Somerset County.......................................................... | Unclassifiable/Attainment. |
| Sullivan County.......................................................... | Unclassifiable/Attainment. |
| Susquehanna County.......................................................... | Unclassifiable/Attainment. |
| Tioga County.......................................................... | Unclassifiable/Attainment. |
| Union County.......................................................... | Unclassifiable/Attainment. |
| Venango County.......................................................... | Unclassifiable/Attainment. |
| Warren County.......................................................... | Unclassifiable/Attainment. |
| Washington County.......................................................... | Unclassifiable/Attainment. |
| Wayne County.......................................................... | Unclassifiable/Attainment. |
| Westmoreland County.......................................................... | Unclassifiable/Attainment. |
| Wyoming County.......................................................... | Unclassifiable/Attainment. |
| York County.......................................................... | Unclassifiable/Attainment. |

**Pennsylvania—1997 8-Hour Ozone NAAQS (Primary and Secondary)**

| Designated area | Designation [a] | | Category/ classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Allentown-Bethlehem-Easton, PA: Carbon County Lehigh County Northampton County............................. | 04/03/08 | Attainment. | | |
| Altoona, PA: Blair County..................... | 08/01/07 (01) | Attainment. | | |
| Clearfield and Indiana, PA: Clearfield County, Indiana County, Northampton County................................................. | April 20, 2009 | Attainment. | | |

| | | | |
|---|---|---|---|
| Indiana County.................................. .............................................. | | Nonattainment | ...................... | Subpart 1. |
| Erie, PA: Erie County............................. | 11/8/2007 | Attainment | | |
| Franklin Co., PA: Franklin County......... | July 27, 2007 | Attainment | | |
| Greene County, PA: Greene County........ | April 20, 2009 | Attainment | | |
| Harrisburg-Lebanon-Carlisle PA: | | | | |
| Cumberland County, Dauphin County, Lebanon County, Perry County.............. | 07/25/07 | Attainment | | |
| Johnstown, PA: Cambria County............ | 08/01/07 | Attainment | | |
| Lancaster, PA: Lancaster County............ | 07/06/07 | Attainment. | | |
| Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE: | | | | |
| Bucks County......................................... | | Nonattainment | | Subpart 2/Moderate. [3] |
| Chester County....................................... | | Nonattainment | | Subpart 2/Moderate. [3] |
| Delaware County.................................... | | Nonattainment | | Subpart 2/Moderate. [3] |
| Montgomery County............................... | | Nonattainment | | Subpart 2/Moderate. [3] |
| Philadelphia County............................... | | Nonattainment | | Subpart 2/Moderate. [3] |
| Pittsburgh-Beaver Valley, PA: | | | | |
| Allegheny County................................... | | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Armstrong County.................................. | | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Beaver County........................................ | | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Butler County......................................... | | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Fayette County....................................... | | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Washington County................................. | | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Westmoreland County............................. | | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Reading, PA: Berks County.................... | 9/10/2007 | Attainment | | |
| Scranton-Wilkes-Barre, PA: Lackawanna County, Luzerne County, Monroe County, Wyoming County...................... | 12/19/07 | Attainment. | | |

| | | |
|---|---|---|
| State College, PA: Centre County........... | 12/14/07 | Attainment. |
| Tioga Co., PA: Tioga County................. | 07/06/07 | Attainment. |
| Williamsport, PA: Lycoming County...... ........................................... | | Unclassifiable/Attainment |
| York, PA: Adams County, York County.. | 02/13/08 | Attainment |
| Youngstown-Warren-Sharon, OH-PA Area: | | |
| Mercer County...................................... | 11/19/07 | Attainment |
| AQCR 151 NE Pennsylvania Intrastate (remainder of): | | |
| Bradford County................................................................ | | Unclassifiable/Attainment |
| Sullivan County................................................................. | | Unclassifiable/Attainment |
| AQCR 178 NW Pennsylvania Interstate (remainder of): | | |
| Cameron County.............................................................. | | Unclassifiable/Attainment |
| Clarion County.............. ............................................. | | Unclassifiable/Attainment |
| Elk County....................................................................... | | Unclassifiable/Attainment |
| Forest County.................................................................. | | Unclassifiable/Attainment |
| Jefferson County............................................................. | | Unclassifiable/Attainment |
| McKean County............................................................... | | Unclassifiable/Attainment |
| Potter County.................................................................. | | Unclassifiable/Attainment |
| Venango County................................ ............................. | | Unclassifiable/Attainment |
| AQCR 195 Central Pennsylvania Intrastate (remainder of): | | |
| Bedford County............................... ............................. | | Unclassifiable/Attainment |

| | |
|---|---|
| Clinton County............................................................ | Unclassifiable/Attainment |
| Fulton County............................................................ | Unclassifiable/Attainment |
| Huntingdon County....................................................... | Unclassifiable/Attainment |
| Mifflin County........................................................... | Unclassifiable/Attainment |
| Montour County.......................................................... | Unclassifiable/Attainment |
| Union County............................................................ | Unclassifiable/Attainment |
| Rest of State............................................................ | Unclassifiable/Attainment |
| Columbia County......................................................... | Unclassifiable/Attainment |
| Crawford County......................................................... | Unclassifiable/Attainment |
| Juniata County........................................................... | Unclassifiable/Attainment |
| Lawrence County......................................................... | Unclassifiable/Attainment |
| Northumberland County................................................... | Unclassifiable/Attainment |
| Pike County.............................................................. | Unclassifiable/Attainment |
| Schuylkill County........................................................ | Unclassifiable/Attainment |
| Snyder County........................................................... | Unclassifiable/Attainment |
| Somerset County......................................................... | Unclassifiable/Attainment |
| Susquehanna County...................................................... | Unclassifiable/Attainment |
| Warren County........................................................... | Unclassifiable/Attainment |
| Wayne County........................................................... | Unclassifiable/Attainment |

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**Pennsylvania—2008 8-Hour Ozone NAAQS**

**(Primary and secondary)**

| Designated area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Allentown-Bethlehem-Easton, PA [2] ................................................ | ................ Nonattainment ........................................................................... | | | Marginal. |
| Carbon County | | | | |
| Lehigh County | | | | |
| Northampton County | | | | |
| Lancaster, PA [2] ............................................................................ | ................ Nonattainment ........................................................................... | | | Marginal. |
| Lancaster County | | | | |
| Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE [2] .............................................................. | ................ Nonattainment ........................................................................... | | 6/3/16 | Marginal. [4] |
| Bucks County | | | | |
| Chester County | | | | |
| Delaware County | | | | |
| Montgomery County | | | | |
| Philadelphia County | | | | |
| Pittsburgh-Beaver Valley, PA [2] ................................... | ................ Nonattainment ........................................................................... | | 6/3/16 | Marginal. [4] |
| Allegheny County | | | | |
| Armstrong County | | | | |
| Beaver County | | | | |
| Butler County | | | | |
| Fayette County | | | | |
| Washington County | | | | |
| Westmoreland County | | | | |
| Reading, PA [2] ............................................................................ | ................ Nonattainment ........................................................................... | | | Marginal. |
| Berks County | | | | |
| AQCR 151 NE Pennsylvania Intrastate (remainder) [3] | | | | |

| | |
|---|---|
| Bradford County......................................................................... .................... | Unclassifiable/Attainment |
| Lackawanna County.................................................................... .................... | Unclassifiable/Attainment |
| Luzerne County........................................................................... .................... | Unclassifiable/Attainment |
| Monroe County............................................................................ .................... | Unclassifiable/Attainment |
| Pike County................................................................................. .................... | Unclassifiable/Attainment |
| Schuylkill County........................................................................ .................... | Unclassifiable/Attainment |
| Sullivan County........................................................................... .................... | Unclassifiable/Attainment |
| Susquehanna County.................................................................. .................... | Unclassifiable/Attainment |
| Tioga County............................................................................... .................... | Unclassifiable/Attainment |
| Wayne County............................................................................. .................... | Unclassifiable/Attainment |
| Wyoming...................................................................................... .................... | Unclassifiable/Attainment |
| AQCR 178 NW Pennsylvania Intrastate [3] | |
| Cameron County......................................................................... .................... | Unclassifiable/Attainment |
| Clarion County............................................................................ .................... | Unclassifiable/Attainment |
| Clearfield County........................................................................ .................... | Unclassifiable/Attainment |
| Crawford County......................................................................... .................... | Unclassifiable/Attainment |
| Elk County.................................................................................. .................... | Unclassifiable/Attainment |
| Erie County................................................................................. .................... | Unclassifiable/Attainment |
| Forest County............................................................................. .................... | Unclassifiable/Attainment |
| Jefferson County........................................................................ .................... | Unclassifiable/Attainment |
| Lawrence County........................................................................ .................... | Unclassifiable/Attainment |
| McKean County.......................................................................... .................... | Unclassifiable/Attainment |
| Mercer County............................................................................ .................... | Unclassifiable/Attainment |
| Potter County............................................................................. .................... | Unclassifiable/Attainment |
| Venango County......................................................................... .................... | Unclassifiable/Attainment |
| Warren County............................................................................ .................... | Unclassifiable/Attainment |
| AQCR 195 Central Pennsylvania Intrastate [3] | |
| Bedford County........................................................................... .................... | Unclassifiable/Attainment |

ADD30

| | |
|---|---|
| Blair County............................................................. ...................... | Unclassifiable/Attainment |
| Cambria County......................................................... ...................... | Unclassifiable/Attainment |
| Centre County.......................................................... ...................... | Unclassifiable/Attainment |
| Clinton County.......................................................... ...................... | Unclassifiable/Attainment |
| Columbia County....................................................... ...................... | Unclassifiable/Attainment |
| Fulton County........................................................... ...................... | Unclassifiable/Attainment |
| Huntingdon County..................................................... ...................... | Unclassifiable/Attainment |
| Juniata County.......................................................... ...................... | Unclassifiable/Attainment |
| Lycoming County....................................................... ...................... | Unclassifiable/Attainment |
| Mifflin County.......................................................... ...................... | Unclassifiable/Attainment |
| Montour County........................................................ ...................... | Unclassifiable/Attainment |
| Northumberland County................................................ ...................... | Unclassifiable/Attainment |
| Snyder County.......................................................... ...................... | Unclassifiable/Attainment |
| Somerset County....................................................... ...................... | Unclassifiable/Attainment |
| Union County........................................................... ...................... | Unclassifiable/Attainment |
| AQCR 196 South Central Pennsylvania (remainder) [3] | |
| Adams County.......................................................... ...................... | Unclassifiable/Attainment |
| Cumberland County.................................................... ...................... | Unclassifiable/Attainment |
| Dauphin County........................................................ ...................... | Unclassifiable/Attainment |
| Franklin County........................................................ ...................... | Unclassifiable/Attainment |
| Lebanon County........................................................ ...................... | Unclassifiable/Attainment |
| Perry County........................................................... ...................... | Unclassifiable/Attainment |
| York County............................................................ ...................... | Unclassifiable/Attainment |
| AQCR 197 Southwest Pennsylvania (remainder) [3] | |
| Green County........................................................... ...................... | Unclassifiable/Attainment |
| Indiana County......................................................... ...................... | Unclassifiable/Attainment |

**Pennsylvania—2015 8-Hour Ozone NAAQS**

§ 81.339 Pennsylvania., 40 C.F.R. § 81.339

| [Primary and Secondary] | | | | |
|---|---|---|---|---|
| **Designated area** [1] | | **Designation** | | **Classification** |
| **Date** [2] | | **Type** | **Date** [2] | **Type** |
| Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE............................................................ | | Nonattainment............................................................................... | | Marginal. |
|    Bucks County. | | | | |
|    Chester County. | | | | |
|    Delaware County. | | | | |
|    Montgomery County. | | | | |
|    Philadelphia County. | | | | |
| Adams County.................................................................... | | Attainment/Unclassifiable | | |
| Allegheny County......................................................1/16/18 | | Attainment/Unclassifiable | | |
| Armstrong County......................................................1/16/18 | | Attainment/Unclassifiable | | |
| Beaver County...........................................................1/16/18 | | Attainment/Unclassifiable | | |
| Bedford County.........................................................1/16/18 | | Attainment/Unclassifiable | | |
| Berks County....................................................................... | | Attainment/Unclassifiable | | |
| Blair County..............................................................1/16/18 | | Attainment/Unclassifiable | | |
| Bradford County........................................................1/16/18 | | Attainment/Unclassifiable | | |
| Butler County............................................................1/16/18 | | Attainment/Unclassifiable | | |
| Cambria County.........................................................1/16/18 | | Attainment/Unclassifiable | | |
| Cameron County........................................................1/16/18 | | Attainment/Unclassifiable | | |
| Carbon County............................................................. | | Attainment/Unclassifiable........................................................... | | |
| Centre County...........................................................1/16/18 | | Attainment/Unclassifiable | | |
| Clarion County..........................................................1/16/18 | | Attainment/Unclassifiable | | |
| Clearfield County.......................................................1/16/18 | | Attainment/Unclassifiable | | |
| Clinton County..........................................................1/16/18 | | Attainment/Unclassifiable | | |
| Columbia County.......................................................1/16/18 | | Attainment/Unclassifiable | | |
| Crawford County.......................................................1/16/18 | | Attainment/Unclassifiable | | |
| Cumberland County................................................... | | Attainment/Unclassifiable | | |

ADD32

| | | |
|---|---|---|
| Dauphin County......................................................................................... | | Attainment/Unclassifiable |
| Elk County........................................................... .....................1/16/18 | | Attainment/Unclassifiable |
| Erie County.......................................................... .....................1/16/18 | | Attainment/Unclassifiable |
| Fayette County................................................................1/16/18 | | Attainment/Unclassifiable |
| Forest County................................................................1/16/18 | | Attainment/Unclassifiable |
| Franklin County........................................................... | | Attainment/Unclassifiable |
| Fulton County.........................................................1/16/18 | | Attainment/Unclassifiable |
| Greene County.........................................................1/16/18 | | Attainment/Unclassifiable |
| Huntingdon County...................................................1/16/18 | | Attainment/Unclassifiable |
| Indiana County..................................................... .....................1/16/18 | | Attainment/Unclassifiable |
| Jefferson County.......................................................1/16/18 | | Attainment/Unclassifiable |
| Juniata County.........................................................1/16/18 | | Attainment/Unclassifiable |
| Lackawanna County...................................................1/16/18 | | Attainment/Unclassifiable |
| Lancaster County........................................................... | | Attainment/Unclassifiable |
| Lawrence County.......................................................1/16/18 | | Attainment/Unclassifiable |
| Lebanon County........................................................... | | Attainment/Unclassifiable |
| Lehigh County................................................... .....................Attainment/Unclassifiable............................................. | | |
| Luzerne County.........................................................1/16/18 | | Attainment/Unclassifiable |
| Lycoming County.......................................................1/16/18 | | Attainment/Unclassifiable |
| McKean County.........................................................1/16/18 | | Attainment/Unclassifiable |
| Mercer County.........................................................1/16/18 | | Attainment/Unclassifiable |
| Mifflin County.........................................................1/16/18 | | Attainment/Unclassifiable |
| Monroe County................................................... .....................Attainment/Unclassifiable............................................. | | |
| Montour County.......................................................1/16/18 | | Attainment/Unclassifiable |
| Northampton County................................................... .....................Attainment/Unclassifiable............................................. | | |
| Northumberland County................................................... .....................1/16/18 | | Attainment/Unclassifiable |
| Perry County........................................................... | | Attainment/Unclassifiable |
| Pike County................................................... .....................Attainment/Unclassifiable............................................. | | |
| Potter County.........................................................1/16/18 | | Attainment/Unclassifiable |

| | |
|---|---|
| Schuylkill County........................................................................................... | Attainment/Unclassifiable |
| Snyder County...........................................................................1/16/18 | Attainment/Unclassifiable |
| Somerset County.......................................................................1/16/18 | Attainment/Unclassifiable |
| Sullivan County.........................................................................1/16/18 | Attainment/Unclassifiable |
| Susquehanna County................................................................1/16/18 | Attainment/Unclassifiable |
| Tioga County.............................................................................1/16/18 | Attainment/Unclassifiable |
| Union County............................................................................1/16/18 | Attainment/Unclassifiable |
| Venango County........................................................................1/16/18 | Attainment/Unclassifiable |
| Warren County..........................................................................1/16/18 | Attainment/Unclassifiable |
| Washington County...................................................................1/16/18 | Attainment/Unclassifiable |
| Wayne County...........................................................................1/16/18 | Attainment/Unclassifiable |
| Westmoreland County...............................................................1/16/18 | Attainment/Unclassifiable |
| Wyoming County.......................................................................1/16/18 | Attainment/Unclassifiable |
| York County............................................................................... | Attainment/Unclassifiable |

### Pennsylvania—2008 Lead NAAQS

| Designated area | Designation for the 2008 NAAQS [a] | |
|---|---|---|
| | Date [1] | Type |
| Lower Beaver Valley, PA: | | |
| Beaver County (part)............................................ [2] | 12/31/10........................ | Nonattainment. |
| Area is bounded by Potter Township, Vanport Township, and Center Township. | | |
| Lyons, PA: | | |
| Berks County (part)................................................ | 12/31/10............................. | Nonattainment. |
| Area is bounded by Kutztown Borough, Lyons Borough, Maxatawny Township and Richmond Township. | | |
| North Reading, PA: | | |
| Berks County (part)................................................ | 12/31/10............................. | Nonattainment. |